Milton Mollen, J.
This is a habeas corpus proceeding in which the relator alleges that his detention is illegal and requests that he be discharged, or in the alternative that bail be fixed on the parole violation warrant.
The facts are not in dispute. On March 19, 1970 the relator was convicted of robbery in the third degree and sentenced to a term of three years in the reformatory. On December 30, 1970 he was paroled.
Upon his release from confinement the relator became active in community affairs. On June 9,1971, while still on parole, the relator was arrested in the course of street demonstrations for the crimes of assault in the second degree, resisting arrest and obstructing governmental administration. Bail was fixed in the sum of $2,500. Subsequently he was indicted for assault in the second and third degrees and he is presently awaiting trial in this court.
On July 9, 1971 the Parole Board declared the relator delinquent nunc pro tunc to June 9,1971, and filed a warrant with the respondent, the warden of the prison where the defendant is being detained. This parole violation warrant was issufed ex parte based upon the information that the relator had been arrested.
The relator has been ready, willing and able to post bail on the assault charges since July 1, 1971 but has been unable to obtain his release because of the parole violation detainer. On October 10,1971 a Justice of this court refused to set bail on the parole violation warrant and the defendant’s confinement was continued. Although the parole violation warrant was filed more than seven months ago no hearing has been accorded to the relator by the Parole Board.
The threshold question for this court’s determination is whether it has jurisdiction of this proceeding. The Attorney-General had not raised this issue in his answering papers, nor on the return date at the time of oral argument. Subsequently in a letter addressed to the court, the Attorney-General raised the contention that since the relator is being detained in the New York City Adolescent Remand Shelter in Queens County this court has no jurisdiction.
The writ of habeas corpus was issued by and made returnable in this court. The charges for which the relator was arrested and subsequently indicted are pending in this court.
The Attorney-General relies on Matter of Hogan v. Culkin (18 N Y 2d 330). That case holds that under CPLR 7004 (subd. [c]) where a writ of habeas corpus is directed to a warden of a *30 State prison, it must be made returnable in the county of detention; in all other cases, the writ is returnable in the county of issuance, unless the issuing Judge decides in his discretion to make it returnable in the county of detention. The purpose of the rule is to relieve the wardens of State prisons of having to transport the inmates to a county other than the county of detention and incur travel expenses to distant courthouses.
CPLE 7002 was amended effective July 1, 1971 (L. 1971, ch. 803) by adding a new paragraph 5 to subdivision (b): “ 5. In a city having a population of one million or more inhabitants, a person held as a trial inmate in a city detention institution shall petition for a writ to a special term of the supreme court held in the county in which the charge for which the inmate is being detained is pending. Such inmate may also petition for a writ to the appellate division in the department in which he is detained or to any justice of the supreme court provided that the writ shall be made returnable before a justice of the supreme court held in the county in which the charge for which the inmate is being detained is pending.”
The relator is not being detained in a State prison. The statute now directs that the petition for the writ shall be in the county where the charge for which the inmate is being detained is pending and shall be made returnable in that county. The writ was properly issued and made returnable in Kings County and this court, therefore, has jurisdiction.
I shall address myself next to the issue of bail. The relator contends that the refusal to fix bail on the parole violation warrant was a denial of his constitutional right to bail. In New York the subject of bail is regulated by statute and the court has only such authority to order the release of a prisoner as is granted by statute (People v. Wirtschafter, 305 N. Y. 515, 519). Where the court has the power to fix bail the constitutional command is that it shall not be excessive (N. Y. Const., art. I, § 5). ‘1 In examining and evaluating legislation of this area, it should be borne in mind that, unlike the 'Constitution of most American jurisdictions, that of New York does not decree any right to bail, but only a prohibition against ‘ excessive bail ’ (Art. I, § 5); and, hence, that any right to bail in this state is purely statutory.” (Denzer, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 11A, CPL art. 530, p. 36.)
CPL 530.10 gives a court the power, upon application of a defendant charged with or convicted of an offense, to fix bail for the release of such defendant during the pendency of the criminal action or during the pendency of an appeal from a judgment of *31 conviction. The statute grants no authority to this court to order bail on a parole violation warrant pending a determination by the Parole Board and the relator has no constitutional right to bail in such a proceeding (Matter of Hardy v. Warden, 56 Misc 2d 332).
The relator further contends that because of the statutory requirement of “ reasonable cause to believe ” in section 216 of the Correction Law he was entitled to a prewarrant hearing and that the issuance of the parole violation warrant ex parte was unconstitutional.
Section 216 of the Correction Law provides: “If the parole officer having charge of a paroled prisoner or a prisoner received under the uniform act for out-of-state parolee supervision shall have reasonable cause to believe that such prisoner has lapsed, or is probably about to lapse, into criminal ways or company, or has violated the conditions of his parole in an important respect, such parole officer shall report such fact to a member of the board of parole or to any officer of the division of parole designated by such board, who thereupon may issue a warrant for the retaking of such prisoner and for his temporary detention or return to a designated prison.” (emphasis supplied).
In People ex rel. Natoli v. Lewis (287 N. Y. 478, 481) the court stated: ‘ ‘ Clearly the arrest or indictment of a paroled prisoner may constitute reasonable cause in the mind of a parole officer having charge of a paroled prisoner for belief that he has lapsed or is probably about to lapse into criminal ways or company and if such attitude of mind causes him to report such belief to a member of the Board of Parole there is no discretion vested in the latter by the statute but he must issue a warrant for the retaking of the prisoner. Certainly the average man would say that arrest upon such a serious charge as robbery in the first degree demonstrated reasonable cause. * * * We cannot go behind the parole warrant, in considering this question of power, to determine whether the arrest on that charge should have constituted reasonable cause in the mind of the parole officer.”
The arrest of the defendant on a charge of assault in the second degree constituted reasonable cause for the issuance of the parole violation warrant. This court lacks the power to go behind the warrant and the relator was not entitled as a matter of right to a prewarrant hearing. The filing of the warrant with the warden of the prison furnished jurisdiction for a parole revocation proceeding. After a detainer warrant has been issued, and filed or executed, the parolee ‘ ‘ may not again be incarcerated unless the board concludes, after a hearing, that *32 he has violated his parole ”. (People ex rel. Menechino v. Warden, 27 N Y 2d 376, 382.)
This brings the court to the final and crucial question as to whether the relator’s rights have been violated by reason of the failure to accord him a hearing after delivery of the warrant to the respondent warden. The Attorney-General takes the position that the relator will receive a hearing before the Parole Board after disposition of the charges now pending against him in this court.
Revocation of the parole is clearly a deprivation of liberty. In People ex rel. Silbert v. Cohen (29 N Y 2d 12, 14) the court said: “ As we indicated in Menechino (27 N Y 2d at p. 382), a parolee may not again be deprived of his liberty unless the Parole Board decides, after a hearing, that he has violated his parole. The hearing to be accorded him is, we declared, ‘ an accusatory proceeding in which the outcome ■ — liberty or imprisonment — is dependent upon the board’s factual determination as to the truth of specific allegations of misconduct. ’ This being so, the proceeding involves a deprivation of liberty just as much as did the original criminal action and, by that token, falls within the protective ambit of due process.”
Due process requires ‘ ‘ notice, a hearing and the aid of counsel ” (People ex rel. Silbert v. Cohen, supra, p. 15) before a determination may be made that parole be. revoked.
Section 212 (subd. 7) of the Correction Law provides in part: “ Whenever there is reasonable cause to believe that a person who is on parole or conditional release has violated the conditions thereof, the board of parole as soon as practicable shall declare such person to be delinquent. Thereafter, the board shall at the first available opportunity permit the alleged violator to appear personally * # * before a panel of three members and explain the alleged violation.” (emphasis supplied).
The legislative intent contained in this section, and the expression of public policy declared thereby, is clear — that the parolee receive a prompt hearing.
In People ex rel. Natoli v. Lewis (supra, p. 482) the court concluded its opinion with the statement: “We must assume that the parole court will act promptly and justly upon the facts presented.” (emphasis supplied). This was a clear warning of the necessity for a prompt hearing. To say that ‘ ‘ due process ” requires notice of the charges, a hearing and the aid of counsel becomes meaningless if the hearing is not timely held, and the relator deprived of his liberty for an appreciable length of time. The statute requires that a hearing in a parole *33 revocation proceeding be held “ at the first available opportunity ”. Manifestly, there has been a failure to comply with the statute and the relator is being illegally deprived of his liberty.
The court has given consideration to the various problems alluded to by the Attorney-General which may arise in the holding of a prompt hearing. The Parole Board would prefer to await the outcome of the pending charge since the “ conviction of another crime or an admitted and unexplained substantial violation of the conditions of parole is adequate, in and of itself, to support a revocation ”. (People ex rel. Maggio v. Casscles, 28 N Y 2d 415, 418.) On the other hand, the Parole Board does not lose jurisdiction by reason of a subsequent acquittal on the new charge (People ex rel. Natoli v. Lewis, supra, p. 481).
The Attorney-General contends that the holding of a hearing in advance of the disposition of the new charge would be unfair to a defendant and violative of his privilege against self incrimination. This contention is bottomed upon the assumption that the parolee may desire to testify in his own behalf at the hearing, and thereby risk incriminating himself in relation to the subsequent criminal proceeding. The obvious answer is that the privilege against self incrimination is a personal one and the parolee must make that decision at the hearing. There are a number of alternatives available to a parolee at that time. It may not be necessary for him to testify at the hearing; or he may, if he wishes, waive the privilege against self incrimination and testify; or he may request an adjournment of the hearing pending the disposition of the new criminal charge. If the parolee requests adjournment of the hearing, then the Parole Board may, in the interest of justice, for good cause shown by the parolee, or on its own motion, lift the detainer warrant pending the disposition of the new criminal charge (7 NYCRR 1.18); or if the Parole Board prefers not to lift the detainer warrant in the face of a request for an adjournment by the parolee, the continued detention would be attributable to the position taken by parolee. Under the present circumstances, it is ironic for the board to urge that it is performing a service for the parolee by protecting his privilege against self incrimination, when the protection takes the form of indefinite deprivation of his liberty.
The Attorney-General further contends that the relator’s remedy is to move for a speedy trial of the pending indictment. Unfortunately, the right to a speedy trial is presently seriously hindered by calendar congestion and other factors such as inadequate court facilities and lack of sufficient supportive court per *34 sonnel. In People v. Minicone (28 N Y 2d 279, 281), the court took note of the present shameful situation when it said: “ Long delays in the prosecution of criminal cases not only affect adversely the rights of the individual accused but have consequences which reflect on the efficiency and fairness of the criminal law.” The Administrative Board of the Judicial Conference of the State of New York has promulgated new rules concerning criminal trial delay and detention, effective May 1, 1972. This court is well aware of the prodigious efforts being expended by the District Attorney of Kings County and the Justices of this court to assure speedy trials. Nevertheless, the fact is that the relator herein has been held over seven months without a trial. Certainly by no stretch of interpretation can such a period be construed to meet the statutory standard of “ first available opportunity ’ ’ for a parole violation hearing.
In addressing itself to the issue of whether the relator has been deprived of due process, the court is of the opinion that the Parole Board has circumvented a cardinal principle of American justice. The sole basis for the original detainer warrant issued by the board, and which is urged as a basis for the continued deprivation of liberty for this length of time without an opportunity to provide bail is that the relator has been arrested and charged with a crime. Totally ignored is the presumption of innocence with which our system of law cloaks every person accused of a crime. This court finds offensive to the concept of due process, within the constitutional sense, a procedure whereby relator, upon arrest, may be deprived of his liberty indefinitely without any opportunity to provide bail to assure his continued presence within the jurisdiction, and without any hearing whatsoever to ascertain whether there be any actual basis for so depriving him of his liberty, other than the fact that he has been accused of a crime.
The court notes further that upon inquiry addressed to the Assistant Attorney-General by this court at the time of oral argument, the Assistant Attorney-General responded by stating that if the relator were relieved of the effects of the present detainer, and permitted to be released upon providing the bail imposed upon the new criminal charge, and if subsequently found guilty of this new criminal charge, or if the Parole Board, after a hearing, finds other appropriate and valid basis for revoking relator’s parole, then the relator would be taken into custody and have to complete serving the remainder of his uncompleted prior sentence upon which he had been paroled, before commencing any new sentence. The Assistant Attorney- *35 General further stated that relator would not receive any credit towards the time required to be served on the prior sentence during the pendency of the present criminal proceeding. Thus, if it is determined that in fact relator violated his parole, his present release on bail during the pendency of the criminal proceeding would not result in any advantage or benefit to relator. However, if relator is in fact innocent of the pending charge, and it is so determined, and if no other violation of parole has been found, then relator will have been unjustly incarcerated and deprived of his liberty for a lengthy period of time.
The Assistant Attorney-General has brought to the attention of this court the case of People ex rel. Crawford v. State of New York (38 A D 2d 725) which was decided by the Appellate Division of this Department subsequent to the oral argument in the instant matter. He cites it in support of the Parole Board’s position. That case holds (p. 727) that an out-of-State parolee ‘1 may not have the question of his parole delinquency reviewed by a hearing in New York, but must challenge it in Georgia, the sending State ’ ’. It is a fair inference from a reading of the entire decision that an in-State parole violator would be entitled to a hearing on the question whether his parole should be revoked.
Accordingly, upon relator’s posting of bail on the charge pending in this court, the writ of habeas corpus is granted, the parole violation warrant shall be vacated and the relator released unless the Parole Board holds a due process parole revocation hearing within 20 days after the date of the oral decision rendered herein.