THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DANIEL WIRTSCHAFTER, Principal. NATIONAL SURETY CORPORATION, Surety, Appellant.

Argued April 22, 1953; decided July 14, 1953.

*Edwin M. Otterbourg, Aaron Rosen, Frederic P. Houston* and *James C. Slaughter* for appellant.   I.  The bail bond accepted by the court for the release of the twice-convicted felon was void and is unenforcible.   (*Shaw* v. *Tobias,* 3 N. Y. 188; *People ex rel. Gagliano* v. *Warden of City Prison,* 188 Misc. 800; *People ex rel. McManus* v. *Warden of City Prison,* 226 App. Div. 364; *People ex rel. Shapiro* v. *Keeper of City Prison,* 290 N. Y. 393; *People ex rel. Bernoff* v. *Kirby,* 265 App. Div. 961; *People* v. *Gould,* 169 Misc. 323; *Winter* v. *Kinney,* 1 N. Y. 365; *Decker* v. *Judson,* 16 N. Y. 439.)   II.  The District Attorney may not proceed against the surety five and one-half years after the original forfeiture.   (*People* v. *Bennett,* 136 N. Y. 482, 137 N. Y. 601; *People* v. *Continental Cas. Co.,* 200 Misc. 546, 279 App. Div. 654.)

*T. Vincent Quinn, District Attorney (Benjamin J. Jacobson* and *George H. Zator* of counsel), for respondent.   I.  Upon issuance to defendant of a certificate of reasonable doubt it was

discretionary with the Chief Judge of the Court of Appeals either to deny or to admit defendant to bail and to fix the amount thereof. (*People ex rel. Hummel* v. *Reardon,* 186 N. Y. 164; *People ex rel. Shapiro* v. *Keeper of City Prison,* 290 N. Y. 393.) II. Section 595 of the Code of Criminal Procedure is neither mandatory nor a statute of limitation; rather it is permissive in its application. (*People* v. *Bennett,* 136 N. Y. 482, 137 N. Y. 601.) III. The bail bond in question is a completely executed contract for which appellant received full consideration. (*Svenska T. F. Aktiebolaget* v. *Bankers Trust Co.,* 268 N. Y. 73; *Hathaway* v. *Payne,* 34 N. Y. 92; *Schoenholz* v. *New York Life Ins. Co.,* 234 N. Y. 24; *Welland Canal Co.* v. *Hathaway,* 8 Wend. 480; *Frost* v. *Saratoga Mut. Ins. Co.,* 5 Denio 154; *Brown* v. *Bowen,* 30 N. Y. 519; *New York Rubber Co.* v. *Rothery,* 107 N. Y. 310; *Rothschild* v. *Title Guar. & Trust Co.,* 204 N. Y. 458.) IV. Appellant's application is neither timely nor is appellant the real party in interest. (*Matter of Peerless Cas. Co.* v. *McGoldrick,* 264 App. Div. 179; *People* v. *Chapman,* 220 App. Div. 781; *People* v. *Friedman,* 220 App. Div. 782; *People* v. *Carlino,* 179 Misc. 296; *People* v. *Brenner,* 167 Misc. 555.)

CONWAY, J. In October, 1943, Daniel Wirtschafter was indicted by a grand jury in the County Court of the County of Queens. The indictment charged him, *as a second offender,* with the crime of grand larceny in the first and second degrees and burglary in the third degree. He had previously and on May 13, 1937, pleaded guilty to an indictment in New York County charging him with the crime of burglary in the third degree and was sentenced to a term of imprisonment of from two and one half to five years. On November 23, 1943, Wirtschafter was convicted of the second offense, as charged, and on December 3, 1943, was sentenced to imprisonment in Sing Sing Prison under an indeterminate sentence of from seven and one half to fifteen years. An appeal was taken to the Appellate Division which court modified the judgment of the County Court (1) by setting aside the verdict of guilty of the commission of the crime of grand larceny in the second degree, and (2) by dismissing the fourth count in the indictment which charged that crime. The judgment of conviction was, in all other respects, affirmed. (*People* v. *Wirtschafter,* 268 App. Div. 993.) In January, 1945,

a certificate of reasonable doubt was granted Wirtschafter so that he might take a further appeal to this court. The certificate contained a direction that he be admitted to bail in the sum of $5,000. Such bond was furnished by National Surety Corporation. We affirmed the decision of the Appellate Division on May 24, 1945. (294 N. Y. 832.)

The defendant failed to appear and on July 18, 1945, a bench warrant was issued by a County Court Judge for his apprehension. The clerk's order book bears the notation in part: " Bench warrant for execution of Judgment." A forfeiture of the bond was, at that time, entered and indorsed on the back of the indictment in the following language:

" July 18, 1945 Bond forfeited.
July 18, 1945 Bench Warrant Issued."

A similar entry appears upon the face of the bond itself, and was apparently made at a later time in order to complete the record of the forfeiture. No action was taken upon the forfeiture for five and one-half years until February 1, 1951, when the District Attorney obtained from a County Court Judge an ex parte order again purporting to forfeit the bond and authorizing the entry of judgment thereon, pursuant to the provisions of section 595 of the Code of Criminal Procedure. This second order of forfeiture is silent as to the previous forfeiture in 1945. Judgment in the sum of $5,000 was entered upon the second order on February 6, 1951.

By order to show cause, National Surety moved, on February 19, 1951, for an order: (1) vacating the judgment of February 6th; (2) declaring the bond null and void, and (3) for such other and further relief as might be just and proper upon the ground that the granting of bail to defendant *after* his conviction as a second felony offender was without authority of law. The motion, made at a Trial Term of the County Court of Queens, was denied by the County Court Judge. The Appellate Division, Second Department, unanimously affirmed, writing an opinion wherein it indicated that it considered the application as one for *remission* of forfeiture and that since the motion had not been made within a year after the forfeiture it was untimely under the provisions of section 598 of the Code of Criminal Procedure.

It was error for the Appellate Division to treat this motion to vacate as an application for remission under section 598 of the code and subject to the time limitation therein contained. An application for remission is addressed to the discretion of the court (*People* v. *Parkin*, 263 N. Y. 428, 431–432; *People* v. *Cohen*, 245 N. Y. 419, 421), and is conditioned upon the payment of the costs and expenses incurred in the proceedings for the enforcement of the forfeiture. (Code Crim. Pro., § 598.) National Surety's motion is a direct challenge to the right of the court to enforce the forfeiture of a *void* bond. By such motion National Surety seeks to invoke the inherent power, possessed by a court, to declare null and void an act performed by it which was done without authority of law and which it was beyond its power to do. As such it is not subject to the time limitation applicable to a motion for remission of the forfeiture.

The County Court clearly had the inherent power to declare null and void an act by which it accepted and approved a bond which it had no authority in law to accept, because of an express statutory prohibition, and by which it released defendant from custody by admitting him to bail, which it was forbidden to do by statute. However, the judgment entered thereafter upon the forfeiture based upon such void bond and recognizance must be vacated by the Supreme Court rather than the County Court since, when the County Court, pursuant to statute, authorized the docketing of judgment as though it were in an action upon a debt (Code Crim. Pro., § 595) by directing it to be filed in the office of the County Clerk of Queens County it became a Supreme Court civil judgment. (See *Gildersleeve* v. *People*, 10 Barb. 35; *People* v. *Lott*, 21 Barb. 130; *People* v. *Hickey*, 5 Daly 365, 374; *People* v. *Quigg*, 59 N. Y. 83, 90; N. Y. Const., art. VI, § 11; County Law, § 909.)

We turn now to the merits.

The subject of bail is one which, in this State, is regulated by statute, the court having only such authority to direct the release of a prisoner upon bail and to accept recognizance as is granted by statute. (*People ex rel. Shapiro* v. *Keeper of City Prison*, 290 N. Y. 393, 398.)

Section 22 of the Code of Criminal Procedure, which deals with the general jurisdiction of the Supreme Court provides,

among other things, that that court has the power " [t]o let to bail any person committed *before and after indictment* found upon any criminal charge whatever." (Subd. 8; italics mine.) Section 552 of the code entitled " Offenses not bailable " provides that a " defendant *cannot* be admitted to bail either before or after indictment *except* by a justice of the supreme court or by a judge of the court of general sessions or a judge of the county court where the defendant is charged  *  *  *  [w]ith a felony  *  *  *  and  *  *  *  there is reason to believe that he has  *  *  *  been previously convicted within the state of a felony  *  *  *." (Italics added.)  Section 555 of the code entitled " Bail after *conviction* " (italics mine) provides in part that " [a]fter the conviction of a crime not punishable with death or life imprisonment a defendant who has appealed, and when there is a stay of proceedings, but not otherwise, may be admitted to bail: 1. As a matter of right, when the appeal is from a judgment imposing a fine only; 2. As a matter of discretion in all other cases, except that  *  *  *  if the defendant is convicted of any of the crimes or offenses described in section five hundred fifty-two of this code and is circumstanced as there described [which is our case here] he shall *not* be admitted to bail." (Italics supplied.)

It will readily be seen, from a reading of the above sections, that a defendant, *charged* with a felony may be admitted to bail before or after indictment, prior to his conviction, even though there is reason to believe that the crime charged is his second felony offense but that *after his conviction* of the second felony, though there be a stay of proceedings by a certificate of a judge of our court (see Code Crim. Pro., § 528), bail is prohibited. The general power to bail, both before and after indictment, contained in section 22 of the code does not conflict with the limited power to bail, after conviction, conferred upon the courts by section 555.  This is made clear when we note that in subdivision 8 of section 22 bail before and after indictment is provided for, which means before conviction, and that a special section deals with " Bail after conviction " (§ 555) which is the title and caption of that section.  Although the Legislature has provided for bail and has designated the public official who may grant it, before and after indictment, even in a case where it

appears that the defendant has been previously convicted of a felony or certain specified misdemeanors or offenses (§ 552), the Legislature has carefully prohibited any public official from admitting to bail anyone who has been twice convicted of a felony (§ 555). The enactments are part of a general over-all plan and are not conflicting. Even were it the fact, as the District Attorney urges, that subdivision 8 of section 22 of the code is a general provision dealing with the power to bail and section 555 is but a special statute containing a provision prohibiting anyone from admitting to bail a defendant who has been twice convicted of a felony, there is still no conflict since under a well-established principle in the construction of statutes special provisions are not repealed or rendered meaningless or inoperative by general provisions contained in the same statute, the general provisions controlling only where the particular special provision is inapplicable. (See McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 238, and cases cited therein.)

The record discloses, and the parties are agreed, that defendant Wirtschafter's appeal to our court in 1945 was from a conviction of a second felony offense. Accordingly, a Judge of our court lacked the power to direct that the defendant be admitted to bail pending his appeal to us and the County Court lacked the power to accept the bond tendered. (See Code Crim. Pro., § 551; *People ex rel. Bernoff* v. *Kirby,* 265 App. Div. 961; *People* v. *Gould,* 169 Misc. 323.)

The admission of Wirtschafter to bail having been unauthorized and invalid, a fortiori, the bond was invalid and without force or effect as a statutory recognizance.

The remaining question in this branch of the case is whether the bond is enforcible as a common-law obligation or by reason of an estoppel.

The overwhelming weight of decisional authority throughout the country is to the effect that a bail bond or recognizance, in a criminal case, which is void as a statutory obligation, because taken without authority, is void for all purposes. It may not be enforced as a common-law obligation nor may the sureties be estopped from asserting its invalidity. (See, e.g., *State* v. *Ricciardi,* 81 N. H. 223, and cases cited in annotation 34 A. L. R. 612 *et seq.,* cases collected in 6 Am. Jur., Bail and Recognizance,

§ 156, where it is written: " A bail bond or recognizance which is void because taken without authority binds neither the principal nor his sureties. * * * Moreover, it has been adjudged that a statutory bond that is void for want of authority in its execution is not enforceable as a common-law obligation. No estoppel exists against the sureties in such a case "; cases collected in 8 C. J. S., Bail, § 43, where it is said: " It is a constantly recurring principle that the right to bail must be secured by law, and that bail allowed or a recognizance taken by a court without jurisdiction or an officer without authority, or a bail bond taken by an officer without authority to do so, is void.")

The cases collected in the cited notes which take such view are well reasoned. The argument, here made, that the delivery of the defendant from prison and his enjoyment of liberty by reason of the bond, is a valid consideration rendering the bond enforcible, has been rejected by the authorities as being untenable. They hold that the State, being an artificial being which acts through its officers who have no authority, independently of statute, to agree upon the terms and conditions upon which the discharge of a prisoner shall be had and, who accordingly, lack capacity to take a bail bond or recognizance unless authorized by express law, cannot by their forbidden and illegal acceptance of an undertaking, create a debt in the State's favor. Neither the prisoner nor his surety obtained anything in a legal sense. Wirtschafter was released on bail in direct contravention of statute and could have been rearrested at any time. It is manifest, therefore, that the arrangement lacked that mutuality which characterizes every valid and enforcible undertaking. Since the direction that defendant be admitted to bail pending the appeal to us was expressly forbidden by law it was the duty of the officer having him in charge to refuse to recognize that unauthorized and illegal direction. Had he so acted and refused to release Wirtschafter on bail, the legality of his action could not be questioned. The State may not be permitted to create a debt and collect money for itself by the forbidden and unlawful acts of its own officers.

The cases of *McClare* v. *Massachusetts Bonding & Ins. Co.* (266 N. Y. 371), and *Toles* v. *Adee* (84 N. Y. 222) are distinguishable from the present case.

In the *McClare* case (*supra*) the State Athletic Commission, without authority, exacted from an athletic club a surety bond to secure payment, upon the demand of the State Athletic Commission, of " any and all indebtedness or liability by said principal due or owing to any person, firm or corporation by reason of any matter or thing arising out of any sparring or wrestling match or exhibition conducted by the said principal ". Plaintiff knew of the existence of the bond and in reliance thereon furnished the principal-athletic club with labor and materials and obtained a judgment for the same which remained unpaid. The State Athletic Commission determined that the sum, so owed, was applicable to sparring or wrestling matches conducted by the athletic club and made demand that the same be paid. Defendant surety company refused to pay and an action was commenced on the bond. We reversed the Appellate Division's affirmance of an order dismissing the complaint for insufficiency. We held that the fact that the State Athletic Commission may have exceeded its statutory powers in exacting the bond was immaterial. The bond was given for the benefit of specified third parties, for good and sufficient consideration, who acted in reliance thereon, hence, the compensated surety was estopped to deny liability. However, there it will be seen, the plaintiff, the third party acting in reliance upon the bond, was not guilty of any fault or wrongdoing. The athletic club, on the other hand, by having given the bond, impliedly, if not expressly, represented to persons, such as plaintiff, that it was safe to extend credit upon the strength of that bond. It thereby induced plaintiff to act where it might not otherwise have acted. Had the athletic club or its surety been permitted, thereafter, to deny the validity of the bond they would have profited wrongfully and at the expense of an innocent plaintiff. It was, therefore, consonant with the ends of justice to hold that the compensated surety was estopped to deny the validity of the bond. As is pointed out in Corpus Juris Secundum (Vol. 31, Estoppel, § 3): " It is commonly stated in many decisions that estoppels are odious and are not favored in law because they exclude the truth. Nevertheless, the wisdom and justice of the principle of estoppel * * * are generally recognized, the view being founded on principles of equity, morality, and justice, and in accord with

good conscience, honesty, and reason; and, as such, the doctrine subserves its true purpose as a plain, practical, fair, and necessary rule of law.''

Here, the plaintiff (the State) is the party who accepted the bond in violation of law. The State is also the party seeking to assert an estoppel against defendant. If the defendant was guilty of wrongdoing in asking that Wirtschafter, a second felony offender, be released on bail, so also was the State, through its officers, wrong in releasing him in violation of law. To permit the State, a wrongdoer, to claim the benefit of the doctrine of estoppel would not be in accord with '' principles of equity, morality, and justice '' nor in harmony with ''good conscience, honesty and reason '', but in subversion of those principles.

In the *Toles* case (*supra*) plaintiff procured an order of arrest against defendant in a civil action. The defendant was thereafter released by the sheriff on a bond which was not in conformity with the court order but which was approved and accepted by plaintiff's attorneys. The judgment in the action was for the plaintiff and suit was commenced upon the undertaking. The defense raised was that since the undertaking was not in conformity with statute it was void and that no action could be maintained thereon. We held that the action was maintainable stating (pp. 237, 238): '' It is competent for the parties, independently of the statute, to agree upon the terms and conditions upon which the discharge shall be had. * * * The evidence shows that the sheriff declined at first to take the undertaking in question, doubting his authority to do so. He did not take it in the exercise of his official authority. He simply, as the transaction is proved, consented, at the solicitation of Adee, to act as the intermediary to ascertain whether the plaintiff's attorneys would accept the undertaking, and, discharge him from arrest. When the plaintiff's attorneys consented to the proposition and accepted the undertaking, it became operative and binding, not as a statutory obligation, but as a common-law agreement between the parties, for a breach of which an action would lie, as upon any other assumpsit.'' As mentioned (*supra*, p. 522) it was not competent for the parties here, independently of statute, to agree upon the terms and conditions upon which the discharge

of Wirtschafter could be had. Those terms have been fixed by the Legislature and may not be varied by the courts or the attorneys for the People. The release of a prisoner, in a criminal case, on conditions other than those prescribed by the Legislature is a void act.

Thus, it is clear that the surety company is entitled (1) to have the bond declared null and void, and (2) to have the judgment entered on the forfeiture of that void bond, vacated.

The order of the Appellate Division should be reversed, with costs, and the matter remitted to the County Court to declare the bond and recognizance null and void without prejudice to a motion thereafter to be made in the Supreme Court to vacate the judgment entered upon the forfeiture of such bond and recognizance.

DESMOND, J. (dissenting). The question is: may a compensated surety and its indemnitor, on a bail bond, escape forfeiture and liability when the convicted defendant absconds, by showing that the release on bail was impermissible under section 552 of the Code of Criminal Procedure, because the defendant's conviction was for a second felony? Public policy and the interests of public justice certainly call for a negative answer to that question, and there is nothing to prevent it, since (whatever be the law in other jurisdictions) there is no New York statute or controlling decision on the question, and such New York authority as we have points unmistakably toward holding the surety liable. The decision we should follow here is *McClare* v. *Massachusetts Bonding & Ins. Co.* (266 N. Y. 371, 375) which held that a compensated surety, which had issued to a New York State commission a bond unauthorized by law, was estopped from denying its validity. " The defendant surety, when it solicited this bond, must have been aware of the terms of the statute creating the State Athletic Commission, and all the other circumstances under which the bond was given, and yet voluntarily sought the premium and gave the bond in the light of this knowledge. This bond was not made conditional, depending upon the validity of the regulations of the State Athletic Commission. The statute and the circumstances under which the bond was issued have not changed. The only change is that the liability provided for in the bond has arisen. Under these conditions, the surety either

knew the law or it cannot now plead ignorance of it and obtain the aid of a court in holding void a bond duly executed, which for the purposes of receiving premiums, it held out as valid then.'' Even the dissent in the *McClare* case (*supra,* p. 382) suggests that, had not the bond there run to third parties to whom the commission owed no duty, it would have been held enforcible as a '' common law '' contractual obligation. We do not have to go so far at this time as to hold that a public officer, taking an illegal bond, may (like a private obligee, see *Toles* v. *Adee,* 84 N. Y. 222, 236; *Mittnacht* v. *Kellermann,* 105 N. Y. 461, 467) enforce it as a binding contract, when there has been consideration for it and reliance on it by the public officer. All we need here, as a ground for an obviously right and just result, is the estoppel ground of *McClare* v. *Massachusetts* (*supra*), a ground just as valid here as there. There is no reason why the People of the State of New York cannot have the benefit of an estoppel.

The judges who ordered and approved this bond acted erroneously in law, because of a mistake of fact. They were not without general jurisdiction of the person and the subject matter. Their error was committed not by way of casting an unauthorized burden on a citizen, but by way of releasing him from custody on his own motion. '' There is an obvious distinction between cases where a charge or burden is attempted to be fastened upon a party by a proceeding *in invitum,* and those where the charge or burden springs from his own voluntary act '' (*People* v. *Kane,* 4 Denio 530, 545). Certainly, the defendant himself would have been estopped or prevented by the courts from using that mistake of fact to resist rearrest, had the mistake been discovered. A fortiori, the surety who took a premium for writing the bond should get no benefit from a judicial mistake of fact.

The order should be affirmed, with costs.

Lewis, Ch. J., Dye and Froessel, JJ., concur with Conway, J.; Desmond, J., dissents in opinion in which Fuld, J., concurs; Van Voorhis, J., taking no part.

Order reversed, etc.