OPINION OF THE COURT
Leonard E. Yoswein, J.
In a series of cases, different depositors of cash bail have moved for remission of the cash bail, or, in the alternative, to vacate the forfeiture of the cash bail. All petitioners are represented by Caesar Cirigliano as attorney for the Legal Aid Society. The parties and the court have agreed that this case will be the guidepost and that all rulings herein shall apply equally to all the others, as the issues in each of these cases are virtually identical.
On January 24, 1980 Jose Castro was arrested and charged with the crime of burglary in the second degree. After a preliminary hearing bail was set at $1,000 cash bail. Petitioner, Tony Oquendo, deposited this amount with the Department of Correction. On January 8, 1981 defendant principal Jose Castro failed to appear in court and the cash bail was forfeited. The forfeited cash bail was remitted to the Director of Finance of the City of New York. On September 22, 1981 defendant principal was arrested on an unrelated matter. On September 28, 1981 defendant pleaded guilty under this indictment to a lesser crime and was sentenced.
Petitioner movant Tony Oquendo now seeks the return of the forfeited cash bail. The District Attorney opposes and a number of issues have been developed.
STATUTE OF LIMITATIONS
Petitioner concedes that the petition/motion herein was made more than one year after the forfeiture, The People claim that the motion/petition to vacate the forfeiture and for remission of bail is untimely.
CPL 540.30 (subd 2) requires that all applications for bail remission be made within one year of the forfeiture.
It is well settled that the right to remission of bail is not a vested right but an act of grace by the Legislature (People v Cohen, 245 NY 419; People v Public Serv. Mut. Ins. Co. [Robinson], 43 AD2d 962, affd 37 NY2d 606). Therefore, the “terms of the statute must be strictly complied with” *789 (People v Public Serv. Mut. Ins. Co. [Robinson], supra, p 612; People v Martin, 225 App Div 572). The one-year time limitation “may not be enlarged even on consent of the District Attorney” (Matter of White, 41 Misc 2d 994; People v Public Serv. Mut. Ins. Co. [Robinson], supra; People v La Monica, 14 AD2d 759; People v Dellamura, 28 NYS2d 584).
An exception to the one-year limitation exists where there is a claim that the bail was illegally accepted. In such a situation the Statute of Limitations is inapplicable and the application may be made at any time (People v Wirtschafter, 305 NY 515; People v Zangrillo, 56 AD2d 668; State v Swinburne, 121 Ariz 404; State v Ricciardi, 81 NH 223; cf. People v Public Serv. Mut. Ins. Co. [Callahan], 43 AD2d 961). This exception to the Statute of Limitations applies equally when the forfeiture of bail is claimed to be void, or illegal (see, e.g., People v Maldonado, 49 Misc 2d 641, affd 31 AD2d 717).
A claim of illegality of the forfeiture procedure is properly made in a motion to vacate the bail forfeiture. Bail remission applications are not the proper form for these claims, since bail remission is addressed to the discretion of the court and not to matters of law.
Although in the instant case the application for bail remission is untimely, having been made beyond the one-year limitation, the application to vacate the forfeiture of bail is timely since it alleges that the forfeiture was unconstitutional or illegal and therefore void (People v Wirtschafter, 305 NY 515, supra).
REMISSION
Although that portion of the application seeking the remission of bail is barred by the Statute of Limitations, the court finds it advisable to briefly discuss the remission applications made in these cases.
It is well settled that remission of bail is within the discretion of the court even when they are timely (People v Licenziata, 230 App Div 358; People v Dellamura, 28 NYS2d 584, 586, supra). However, as stated in People v Peerless Ins. Co. (21 AD2d 609, 613): “In quite recent times the Court of Appeals has made clear and explicit the twin governing principles, namely, that a remission is justified *790 only in exceptional circumstances and that there must have been no loss of rights or prejudice to the People. As a corollary rule, the surety has the burden of proof with respect to both bases for a requested remission.” (Emphasis supplied; see, also, People v Public Serv. Mut. Ins. Co. [Santiago], 43 AD2d 963, affd 37 NY2d 606.)
To grant remission applications routinely would effectively destroy the purpose of bail. If depositors of cash bail or sureties on bail bonds believed that remission would be granted automatically there would be no incentive to insure defendant principal’s return to the court on the scheduled date.
Bare allegations of severe hardship are “insufficient to justify remission” (People v Midland Ins. Co., 97 Misc 2d 341, 345). The application for bail remission must set forth “the extent of their [applicants’] resources or. just how limited they are” (People v Fiannaca, 306 NY 513, 518). Affidavits by attorneys representing applicants (rather than the depositor of cash bail) are insufficient to grant remission (People v Public Serv. Mut. Ins. Co. [Santiago], 37 NY2d 606, 613, supra).
In these cases the bare allegations made by the attorneys are insufficient to overcome the Statute of Limitations, or for the court to exercise its discretion to grant remission (People v Stuyvesant Ins. Co., 27 AD2d 858). Thus, even if the Statute of Limitations would not bar these claims, the applications for remission on their face require denial.
The court turns to the arguments relative to vacatur of the bail forfeiture on the grounds of the unconstitutionality of the New York bail forfeiture procedure.
STANDING
The People allege that a depositor of cash bail lacks standing to make an application seeking vacatur of a cash bail forfeiture. They allege section 798 of the Judiciary Law specifies that only a defendant or a surety may make an application for bail remission. In addition, the District Attorney contends that cash bail must be deemed to belong to the defendant, even though deposited by a third party, and thus, the depositor has no right to seek vacatur of the cash bail forfeiture.
*791 This court does not agree with this interpretation of section 798 of the Judiciary Law. While it is true that a depositor of cash bail is not a surety, section 798 of the Judiciary Law does not restrict the category of persons who may make a remission application. The statute is not restrictive in indicating who normally makes bail remission applications. Furthermore, section 798 of the Judiciary Law is applicable only to applications for bail remission, and has no application to vacatur of forfeitures.
As to the People’s claim that defendant principal must be deemed to be the sole owner of the cash bail, this court disagrees. Support for the People’s position can be found in State v Alione (140 Me 210). In that case the court ruled that a depositor of cash bail has no standing to seek the return of the forfeited bail because the applicable statute, as interpreted, provided that the money belonged to a defendant principal. The money, under said statute, could be returned only to a defendant, or to “a third person on her [defendant’s] order” (supra, p 212). In New York howeyer, there is statutory authority for the return of cash bail to the depositor (General Municipal Law, § 99-m). The New York statute is equivalent to an order by defendant to return it to a third person, i.e., the depositor.
Section 99-m of the General Municipal Law, as is relevant, reads as follows: “Upon the exoneration of the bail, the money so deposited * * * shall * * * be refunded to the person who originally deposited such money.” This court finds that the word “exoneration” as above used includes both remission and vacatur of a bail forfeiture. Thus, should the court grant the motion the money must be returned to the depositor (Balter v County of Wyoming, 70 AD2d 1051). Also, the depositor of cash bail “possessed] an interest in the outcome which the court is bound to protect” (People [Donovan] v Rounati, 258 App Div 585, 587).
As a person whom the court is “bound to protect”, and as a person entitled to receive the proceeds of any exonerated bail, a depositor of cash bail has standing to make an application for the return of forfeited bail.
EQUAL PROTECTIONS OF THE LAW
Petitioners all claim that their rights to equal protection of the law under the United States and New York *792 State Constitutions have been violated. They contend that they are unfairly discriminated against because depositors of cash bail have fewer rights than do sureties of bail bonds.
It is undisputed that the New York statutory scheme differentiates between depositors of cash bail and sureties of bail, bonds. For example:
(1) CPL 210.10 (subd 2) requires that, if during the pendency of a felony complaint a defendant is indicted, notice of the indictment must be given to the surety on a bail bond, but it contains no provision for notice to a depositor of cash bail.
(2) CPL 530.80 (subd 2) permits an obligor on a bail bond to surrender a defendant at any time, but CPL 530.80 (subd 3) does not permit a depositor of cash bail to surrender a defendant; only a defendant can affect his own surrender.
(3) CPL 540.10 requires that after forfeiture of a bail bond, entry of a judgment on a forfeiture must be made; but that statute does not require entry of a judgment after forfeiture of cash bail.
(4) It must also be noted that not only are the rights of bail bondsmen different from depositors of cash bail but their obligations are also different. CPL 520.20 (subd 2, par [e]) requires “posters” of bail bonds to insure defendants’ appearance in court. No similar obligation is imposed on a depositor of cash bail. These are but a few examples of the statutory distinctions.[1]
However, not every statutory discrimination is a violation of the equal protections clause of the Constitution. When, as here, we are not dealing with a fundamental constitutional right (see People ex rel. Calloway v Skinner, 33 NY2d 23, 33; People ex rel. Shapiro v Keeper of City Prison, 290 NY 393,398), nor a suspect class, the test of the constitutionality of the statute is the “rational basis” test (People v Drayton, 39 NY2d 580, 584-585; People v Elliby, 80 AD2d 875, 875-876). Under this standard “[a] classification ‘must be reasonable, not arbitrary, and [have] a fair and substantial relation to the object of the legislation, so *793 that all persons similarly circumstanced shall be treated alike.’ ” (Reed v Reed, 404 US 71, 76; Neale v Hayduk, 35 NY2d 182, 186.) As stated in McGowan v Maryland (366 US 420, 426), “statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.” (See, also, Matter of Lief v Hynes, 98 Misc 2d 817, 823.)
The distinctions in rights, duties and obligations between bail bondsmen and depositors of cash bail originate in English common law and from legal theories developed in case law. At common law, bail bonds implied a stringent degree of responsibility by the poster thereof. The strict theory in the Thirteenth Century was that all chattels of the sureties were at the King’s mercy. Those who put up bail were liable to render their own bodies to jail. Sometimes a whole township was made responsible for a prisoner’s appearance. This harsh practice, however, was alleviated by the trend toward having a court assess a financial penalty if the surety did not produce the prisoner (2 Pollock and Maitland, History of English Law [2d ed], pp 589-590). From this, the concept of forfeiture of bail bonds was developed as a financial penalty to be assessed if the surety failed to produce the defendant. The responsibility for insuring a defendant’s appearance is on the surety of a bail bond (CPL 520.20, subd 2, par [e]).
In contrast, cash bail is purely a creature of statute (see 8 CJS, Bail, § 52). Absent statutory authority there is no right to deposit cash as bail (Badolato v Molinari, 106 Mise 342, 345). Cash bail did not exist in common law. The theory behind cash bail was explained in Moloney v Nelson (158 NY 351, 355) where the court stated “It is the loss of the money deposited * * * that is relied upon to secure the presence of the accused.” In cash bail the law “look[s] to the money security for the reappearance of the accused, rather than to the personal custody or care of a bondsman or a recognizor” (Ann., 170 ALR 1161, 1168 and cases cited therein). It is the money deposited with the court that insures defendant’s appearance. There is no promise to pay sometime in the future any moneys by the depositor since the cash bail has already been given to the court. The money, when so deposited is held by the court as trustee of *794 the money (Young v Stoutamire, 131 Fla 535, 539-540; White v Ordille, 229 NC 490, 494-495; Mundell v Wells, 181 Cal 398, 404-405; People v Benmore, 298 Mich 701, 704-705). The terms of such trust is that if defendant appears, the money shall be returned to the depositor, and if defendant fails to appear, it shall be given to the appropriate authorities.
Thus the underlying legal theories behind bail bonds and cash bail are different. “[I]t is evident that cash bail stands on a somewhat different footing from that of a surety bond” (People v Brannon, 41 Misc 2d 307, 308). In summary, in bail bonds the law looks to the surety to guarantee defendant’s appearance; while in cash bail the law looks to the money already in the hands of the State to insure defendant’s appearance.
This distinction supplies a rational basis for the differences contained in the statute, e.g., there is no right to surrender a defendant by a depositor of bail because we do not look to the depositors for defendant’s appearance. Similarly, all other distinctions may be explained by the differences in the underlying theories between cash bail and bail bonds.
OWNERSHIP OF CASH BAIL
The People claim that cash bail is deemed to be owned by defendant even though deposited by a third party (as previously stated, this was one of the claims regarding petitioner’s standing).
Cash bail is purely a statutory creation. It was not until 1881 with the enactment of the Criminal Code that cash bail was permitted to be deposited in New York (Badolato v Molinari, 106 Misc 342, 345, supra). One of the first cases to discuss ownership of cash bail was the case of People ex rel. Gilbert v Laidlaw (102 NY 588). In that case, the lower court deducted the amount of a fine imposed on defendant from the cash bail posted. Petitioner argued that since he, and not the defendant, deposited the money, the court did not have the authority to deduct the fine. He argued that as the poster of cash bail he was not responsible for the defendant’s sentence. The Court of Appeals stated (supra, at p 591): “we think it was the plain purpose of the statutes *795 to require that the money thus - deposited should, for the purposes of the deposit, in fact be the money of the defendant”, thus holding that even though the cash bail was deposited by a third party it is, for the purposes of the deposit, deemed to be owned by the defendant.
In 1953, the Court of Appeals again had an opportunity to discuss this issue. In Standard Elec. Equip. Corp. v Laszkowski (305 NY 58, 61), “[E]ven though the fund was provided by a third party * * * such deposit be deemed the property of the defendant for the purposes of the action” (cf. Chancer v Chancer, 308 NY 204). The Court of Appeals thus iterated and cited with approval the principle set forth in People ex rel. Gilbert v Laidlaw (102 NY 588, supra).
In 1978, Judge Cox of the United States District Court, Southern District of Texas in United States v Parr (451 F Supp 190) indicated that the principle of People ex rel. Gilbert v Laidlaw was still applicable today. Other jurisdictions have adopted the principle that cash bail is deemed, for the purposes of the deposit, to be defendant’s and not of the person who deposited it (Mundell v Wells, 181 Cal 398, supra; State v Wilson, 65 Ohio Abs 422; United States v Widen, 38 F2d 517; Whiteaker v State, 31 Okla 65; State v Wisnewski, 134 Wis 497; State v Schultz, 245 NW2d 316 [Iowa]; State v Grant, 44 Ore App 671; see cases in Ann., 7 ALR 389; 2 Wharton’s Criminal Procedure [12th ed], § 307, pp 176-177; 8 CJS, Bail, § 53, p 154). The underlying theory appears to be that if the law looks to the money to insure defendant’s appearance, it must be his. If the money was deemed someone else’s, i.e., the depositor’s, then there would be little or no incentive for the defendant to appear in court. There would be no risk to the defendant for the failure to appear.
There are, however, limitations on this principle. The money is deemed to be defendant’s only for the purposes of the deposit. Once the purposes of the deposit have been fulfilled and the defendant has appeared in court at all times required by law and the criminal action has been terminated, then the depositor of cash bail has a superior right to the return of cash bail even as against the defendant (see, e.g., Balter v County of Wyoming, 70 AD2d 1051, *796 supra; People ex rel. Meyer v Gould, 75 App Div 524; Cohen v Bruere, 96 Misc 609, affd 179 App Div 884; Cogliano v Ippolito, 16 Misc 2d 95; Steinberg v Frankel, 154 Misc 179). This is also the principle in other jurisdictions (Rodman v Superior Ct. of Nevada County, 13 Cal 2d 262; Blackham v Snelgrove, 3 Utah 2d 157, see concurring opn of Judge Henriod (p 161) and cases cited in Ann., 92 ALR2d 1084; 8 Am Jur 2d, Bail & Recognizance, §§ 93-96).
This court finds that until the criminal proceeding has been terminated the cash bail is deemed to be owned by defendant but thereafter, the actual depositor is deemed to be the owner.
DUE PROCESS
The petitioners also claim that the statutory scheme of bail forfeiture is unconstitutional because depositors of cash bail receive neither prior notice of forfeiture nor notice that the money, after it has been forfeited, has been turned over to the proper authorities.
In Fuentas v Shevin (407 US 67, 80), the court said: “For more than a century the central meaning of procedural due process has been clear: [All] ‘Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.’” Put another way, “at a minimum they [due process rights] require that deprivation of * * * property * * * be preceded by notice and opportunity for hearing appropriate to the nature of the case.” (Mullane v Central Hanover Trust Co., 339 US 306, 313.)
It is undisputed that New York does not require either notice of forfeiture or notice of taking after forfeiture to the depositor of cash bail (see People v Brown, 96 Misc 2d 127, 129; People v Bliss, 66 Misc 2d 398, 400).
One possible answer to the due process claim is that for the purposes of the deposit, the money is deemed the defendant’s and not the depositor’s. Thus, when forfeiture occurs before the termination of the criminal action, the depositor has no property right in the cash bail. Therefore, prior notice to him is not constitutionally mandated.
There are, however, more fundamental reasons why the failure of notice is not a violation of due process. It has long *797 been held in the Federal courts that there is no need to notify sureties of bail forfeiture (National Sur. Co. v United States, 29 F2d 92, 102; Williams v United States, 444 F2d 742), nor does a failure to notify a surety violate due process (United States v Biagas, 685 F2d 447 — for the holding of this case, see 32 Grim L Rptr 4157, where cert to the US Supreme Ct. is den sub nom. Cotton Belt Ins. Co. v United States, 456 US 978). The underlying rationale is that “It is his [surety’s] duty to follow the proceedings” (Western Sur. Co. v United States, 51 F2d 470, 472). Since forfeiture of bail occurs in open court and the surety has a duty to follow the proceedings, he is deemed to know that forfeiture has occurred (cf. United States v Kripplebauer, 463 F Supp 291, 293). As stated in Allied Fid. Ins. Co. v State of Florida (415 So 2d 109, 112), “Thus, the written notice of forfeiture at best advises the surety of that which it should be deemed to constructively know.” The surety has a duty to know what occurs in open court and therefore he has constructive knowledge of the actual forfeiture. There is thus no constitutional requirement for notice of forfeiture of bail.
There is also no due process requirement for notice of the taking of the cash bail after forfeiture. In order to be entitled to due process notice, there must be a “taking” of a person’s property (Board of Regents v Roth, 408 US 564, .577). In cash bail, “The defendant and his deposit is [sic] already in court. Execution upon a judgment to convert the property of a surety into money is unnecessary. The deposit is ready to be seized for non-appearance at the day set for trial” (State v Wilson, 65 Ohio Abs 422, 427, supra). The money in cash bail is already “in the custody and control of the court” (Tate v Lamb, 195 Va 1005,1012). As the money is already in court and the court acts as trustee for the money, there is no “taking” of depositor’s property. He has already relinquished custody and control thereof. Therefore, there is no necessity for due process notice.
Further, as previously indicated, the terms of the trust are that the money is to be given to the proper authorities if defendant fails to appear, or if he appears, the money is to be returned to the depositor. When a depositor of cash bail deposits the money he is deemed to do so in compliance *798 with the law. Thus, he is deemed to know the terms of the trust.
The depositor’s claim that at the time he posted bail he was unaware of the exact circumstances in which the deposit might be irretrievably lost is unacceptable. CPL 500.10 (subd 10), as is pertinent, states: “ ‘Cash bail’ * * * such money will become forfeit * * * if the principal does not comply with the directions of a court requiring his attendance at the criminal action or proceeding”. Petitioner/movant “when he deposited this money must be assumed to have known the provisions of these statutes, and the deposit must have been made in compliance with them.” (People ex rel. Gilbert v Laidlaw, 102 NY 588, 592, supra). The principal having been released in accordance with the statute, the depositor is “assumed” to have consented to all the provisions contained in CPL title P (see, also, Municipal Mettalic Bed Mfg. Corp. v Dobbs, 253 NY 313, 317; cf. Penal Law, § 15.20, subd 2) including the fact that the deposit would be forfeited if the principal fails to appear in court.
Petitioner’s other arguments of lack of knowledge of the terms of cash bail must similarly be rejected.
The court concludes that there is no due process requirement of notice to a depositor of cash bail.
SURETIES
Petitioners claim that they are “sureties.” As such, they seek to avail themselves of all the statutory and constitutional rights of a surety.
CPL 500.10 (subd 12) defines sureties as “an obligor who is not a principal.” CPL 500.10 (subd 11) defines obligor as “a person who executes a bail bond”. A depositor of cash bail does not execute a bail bond, and therefore is not an obligor. Since he is not an obligor, he cannot be a surety. While petitioners recognize that the statute excludes them from the definition of surety they ask the court to grant them surety status by judicial fiat. The court cannot overrule the clear legislative mandate without a finding of unconstitutionality.
In addition, the granting to depositors of cash bail surety status is contrary to the legal theory previously discussed. Depositors of cash bail make no future promise to pay. *799 Instead, they physically deposit the cash money as security with the court. In so doing, they differ from obligors on bail bonds who make a future promise to pay if defendant fails to appear.
Petitioner’s additional claim of surety status because the cash receipt given them by the Department of Correction states “surety” is troublesome. However, the doctrine “of estoppel is generally not available against the State * * * irrespective of any representation made by a State employee or official * * * Estoppel should be allowed against the State only if failure to do so would defeat a right legally and rightfully maintained; it should not be used to create a right” (Matter of Leizer v Ambach, 91 AD2d 1117,1118). In the instant circumstances cash receipt cannot give petitioners a legal right which the statute and case law did not give them. Petitioner’s argument that they are ignorant of the statute and the case law is not overriding. Having used the statute to obtain the principal/defendant’s release, petitioner/movant cannot complain of its use to insure the People’s rights.
The court strongly urges, through administrative process, that this and other errors in the cash bail receipt issued by the Department of Correction be modified.
The court finds that depositors of cash bail are not sureties.
Petitioner’s further request for the equitable relief of rescission or reformation of the cash bail undertaking is also denied. The rights and duties of the depositors of cash bail are purely statutory, and the court cannot judicially expand them. At this time it would be inequitable to rescind or reform the cash bail undertaking since both sides have already fully performed their obligations.
The court has examined and considered all of the remaining claims and finds them without merit.[2] The petitions/motions are dismissed/denied, respectively.
*800 While the court has denied the petition, the court feels that the statutory scheme, with regard to cash bail, merits re-examination by the Legislature. Although the court has set forth herein the legal theories of cash bail, the reality of the Twentieth Century indicates that these theories should be abandoned. It is unrealistic to believe that money deposited by a third party would be incentive enough to a defendant to appear in court. Depositors of cash bail should receive similar treatment to sureties on bail bonds. They, at the least, should have the opportunity to surrender defendants at- any time, among other rights accorded to a surety.

. For a definition of cash bail, surety, obligor and bail bond see CPL 500.10.

. Petitioner Tony Oquendo claims that his equal protection rights have been violated. He claims that while the statute does not require notice of forfeiture to depositors of cash bail, other cash bail depositors have in fact received such notice. The rational basis for discriminating against Tony Oquendo is fully set forth in his petition or motion in par 15. There, he enumerates the previous occasions where the court vacated prior bail forfeitures. Having at least on 10 separate occasions granted vacatur of the bail forfeiture, the court felt that no further courtesies were due petitioner. This supplies the rational basis for discriminating against Tony Oquendo.