OPINION OF THE COURT
Anthony J. Cutrona, J.
Seneca Insurance Company (surety) moves to vacate the judgment of forfeiture of bail entered on September 9, 1999 on the ground that the surety never received notice of defendant’s arraignment.
*16 In deciding this motion, the court has considered the moving papers, the affirmation in opposition, and the reply affirmation.
On March 8, 1999, Manuel Ramos (defendant) was arrested for operating a motor vehicle while under the influence of alcohol or drugs. On March 9, 1999, defendant was arraigned on a felony complaint and bail was set at $1,500. That same day, surety posted a bail bond for defendant, who was then released from custody.
According to the People, sometime before August 1999, defendant was in Part Jury 1 in the criminal court and was informed that he (defendant) had been indicted.[1] Further, according to the People, on July 30, 1999 a clerk of this court mailed a notice of arraignment to defendant and his counsel setting forth the fact that defendant was to be arraigned on August 12, 1999, at 9:30 a.m., at 360 Adams Street, Brooklyn, New York, room 941, Part 25.[2] It is conceded that neither notice of defendant’s arraignment was mailed to the surety nor personal service of the notice of arraignment was made on the surety.
On August 12, 1999, defendant failed to appear for arraignment and a bench warrant was ordered and bail forfeited. In accordance with the procedures outlined in CPL 540.10 (2) and (3), the District Attorney’s office proceeded to enter judgment against the surety on September 9, 1999. The judgment was entered without notice to the surety of the failure of defendant to appear or of the forfeiture of the bail (see, Matter of People [Lexington Sur. & Indem. Co]., 272 NY 210, 214). By letter dated September 13, 1999, the District Attorney’s office notified surety of the entry of judgment.
By notice of motion dated November 30, 1999, surety moved for an order “vacating and setting aside” the judgment of forfeiture.
Nature of the Motion
It is important to determine the nature of the motion. If the motion is in the nature of “remission” of bail or made pursuant to CPLR 5015, then surety has failed to establish any of the *17 criteria of either theory.[3] On the other hand, if this is a motion addressed to the inherent power of the court to vacate or set aside an order or judgment of the court, the motion may meet the criteria of such a motion.[4] This issue centers on whether, when the Legislature enacted a scheme for bail remission, it thereby intended to supercede or preempt the court’s inherent power to vacate its judgments (see, People v Varela, 124 Misc 2d 992, 995).
In People v Wirtschafter (305 NY 515), a surety moved to vacate a judgment of bail forfeiture. The lower court denied the motion. The Appellate Division affirmed the denial. In affirming the denial, the Appellate Division applied the Statute of Limitations applicable to bail remission applications. The Court of Appeals reversed the denial of the vacatur of the bail forfeiture and granted the motion, saying (at 519): “It was error for the Appellate Division to treat this motion to vacate as an application for remission under section 598 of the code and subject to the time limitation therein contained. An application for remission is addressed to the discretion of the court (People v. Parkin, 263 N. Y. 428, 431-432; People v. Cohen, 245 N. Y. 419, 421), and is conditioned upon the payment of the costs and expenses incurred in the proceedings for the enforcement of the forfeiture. (Code Crim. Pro., § 598.) National Surety’s motion is a direct challenge to the right of the court to enforce the forfeiture of a void bond. By such motion National Surety seeks to invoke the inherent power, possessed by a court, to declare null and void an act performed by it which was done without authority of law and which it was beyond its power to do. As such it is not subject to the time limitation applicable to a motion for remission of the forfeiture.” The Court held that despite the existence of bail remission procedures, the Court still maintained its inherent power to “declare null and void” an act which was done without authority of law.
After enactment of the current Criminal Procedure Law, courts have similarly recognized the inherent power of the court to vacate its judgments in bail forfeiture situations (see, People v Salabarria, 121 AD2d 438, 440;[5] People v Santiago, *18 175 Misc 2d 268, 270;[6] People v International Fid. Ins. Co., 155 Misc 2d 515, 517; People v Varela, 124 Misc 2d 992, 995, 996-997, supra [discussing this issue extensively]; People v Castro, 119 Misc 2d 787, 789, affd on opn below 111 AD2d 910).
The court concludes that this is a motion addressed to the “inherent power” of the court to vacate its own actions.[7]
Constitutional Considerations
When a party claims a violation of notice requirements, the claim raises an issue of due process notice requirements of the Federal Constitution.[8]
In People v Castro (119 Misc 2d 787, affd on opn below 111 AD2d 910, supra), the court addressed the due process requirements of the Federal Constitution ás it relates to sureties of criminal defendants. The court said (at 796-797):
“The petitioners also claim that the statutory scheme of bail forfeiture is unconstitutional because depositors of cash bail receive neither prior notice of forfeiture nor notice that the money, after it has been forfeited, has been turned over to the proper authorities.
“In Fuentas v Shevin (407 US 67, 80), the court said: ‘For more than a century the central meaning of procedural due process has been clear: [All] “Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.” ’ Put another way, ‘at a minimum they [due process rights] require that deprivation of * * * property * * * be preceded by notice and opportunity for hearing appropriate to the nature of the case’ (Mullane v Central Hanover Trust Co., 339 US 306, 313).
“It is undisputed that New York does not require either notice of forfeiture or notice of taking after forfeiture to the depositor of cash bail (see People v Brown, 96 Misc 2d 127, 129; People v Bliss, 66 Misc 2d 398, 400) * * *
“There are, however, more fundamental reasons why the failure of notice is not a violation of due process. It has long been held in the Federal courts that there is no need to notify sureties of bail forfeiture (National Sur. Co. v United States, *19 29 F2d 92, 102; Williams v United States, 444 F2d 742), nor does a failure to notify a surety violate due process (United States v Biagas, 685 F2d 447 — for the holding of this case, see 32 Grim L Rptr 4157, where cert to the US Supreme Ct. is den sub nom. Cotton Belt Ins. Co. v United States, 456 US 978). The underlying rationale is that Tt is his [surety’s] duty to follow the proceedings’ (Western Sur. Co. v United States, 51 F2d 470, 472). Since forfeiture of bail occurs in open court and the surety has a duty to follow the proceedings, he is deemed to know that forfeiture has occurred (cf. United States v Kripplebauer, 463 F Supp 291, 293). As stated in Allied Fid. Ins. Co. v State of Florida (415 So 2d 109, 112), ‘Thus, the written notice of forfeiture at best advises the surety of that which it should be deemed to constructively know.’ The surety has a duty to know what occurs in open court and therefore he has constructive knowledge of the actual forfeiture. There is thus no constitutional requirement for notice of forfeiture of bail.”
This court fully agrees with the Castro court’s constitutional analysis, and for the same reason finds that a surety has no constitutional right to notice of a defendant’s date of arraignment (see generally, United States v Gambino, 809 F Supp 1048).
CPL 210,10 (2)
A State Legislature may grant a person greater rights than are required by the Federal Constitution. CPL 210.10 (2) reads as follows: “If a felony complaint against the defendant was pending in a local criminal court or if the defendant was previously held by a local criminal court for the action of the grand jury, and if the defendant is at liberty on his or her own recognizance or on bail pursuant to a previous court order issued in the same criminal action, the superior court must, upon at least two days notice to the defendant and his or her surety, to any person other than the defendant who posted cash bail and to any attorney who would be entitled to notice under circumstances prescribed in subdivision one, direct the defendant to appear before the superior court for arraignment on a specified date. If the defendant fails to appear on such date, the court may issue a bench warrant and, in addition, may forfeit the bail, if any. Upon taking the defendant into custody pursuant to such bench warrant, the executing police officer must without unnecessary delay bring the defendant before such superior court for arraignment. If such superior court is not available, the executing police officer may bring the defendant *20 to the local correctional facility of the county in which such superior court sits, to be detained there until not later than the commencement of the next session of such court occurring on the next business day.” The statute states that the superior court “must” notify defendant, his attorney, and his or her surety of the date of arraignment. Ordinarily, the word “must” in a statute is a word of command and mandates the act directed be done, unless there is evidence of legislative intent to the contrary (People v Schonfeld, 74 NY2d 324, 328 [holding that the word “must” in the bail forfeiture is mandatory language]; Myers v Slutsky, 139 AD2d 709).
In CPL 210.10 (2) the word “must” relates to the words “notice to the defendant and his or her surety” and “any attorney.” It is clear that the word “must” is mandatory language as to notice to “the defendant” and his attorney (see, People v Salabarria, 121 AD2d 438, supra).[9] The word “must” appears once in the sentence relating to notice and should be interpreted consistently throughout the same sentence as mandatory. Since the words “or his or her surety” directly follow the words “the defendant” and precede the requirement of notice to defense counsel, this court interprets the word “must” as it relates to sureties the same as it relates to defendant and defense counsel, i.e., as mandatory language. This court declines to dissect the single word “must” as having different meaning as to defendant and his attorney on one side and the surety on the other side.
In addition, the Court of Appeals has held that CPL 210.10 ' (2) creates a “nondelegable duty” on the “superior court” to comply with the requirements of this section (People v Goss, 87 NY2d 792, 798). When the Court of Appeals uses the word “nondelegable,” this court interprets that to mean that neither the People, defendant, his attorney, nor the surety has any obligations under the statute, and whatever obligations exist devolve on the “superior court.”
The court holds that the “superior court” is obligated to send notice to the surety by statute.
*21 CPL 210.10 (2) does not specify the type of notice or the manner of service of the notice that is required. “It is a general rule that where a statute requires notice to be given, but does not specify the type of notice, actual personal notice is required, and the notice must be personally served on the person to be notified” (58 Am Jur 2d, Notice, § 28, at 591-592).[10] Both Florida and Georgia have statutes requiring “notice” to sureties of defendant’s arraignment. In both States, the statute does not specify the type of notice or the manner of service. Both States apply the above rule to their particular statutes and hold that a surety on a bail bond requires actual notice and personal service (State v Flint, 355 So 2d 482, 483 [Fla]; Jam Bonding Co. v State, 182 Ga App 608, 608-609, 356 SE2d 551, 552-553). Both States hold that failure of actual notice requires rescission of any bail forfeiture (supra).
The court finds that, absent any other indication by the Legislature, a “superior court” must give actual notice to the surety by personal service.[11] The court does not determine the method of actual notice or personal service. Both sides appear to concede that actual notice was not given nor was personal service made by the “superior court.”
The requirement of actual notice and personal service is consistent with the purpose of the notice. By giving a bail bond, “the surety has pledged itself to assure the return of the defendant to court” (People v Public Serv. Mut. Ins. Co., 37 NY2d 606, 611). Since it is the surety’s legal obligation to assure defendant’s appearance in court, the surety must have a method to ascertain when defendant is required to appear in the proceeding. Normally, a statement in open court of the next court date would suffice. However, when dealing with defendant’s appearance in a “superior court” for arraignment on an indictment, there would not always be an announcement in open court of the next court date. The statutory scheme *22 provides for the criminal court to hold defendant for the action of the Grand Jury, either after preliminary hearing or by waiver of the preliminary hearing by defendant (CPL 180.60, 180.30). At the time of a waiver of preliminary hearing or after the finding of reasonable cause to hold defendant for action of the Grand Jury, the court usually does not set a date for arraignment in the superior court, because the court does not know whether the Grand Jury will indict him or her for any crime. The Grand Jury proceeding is secretive. There is no method open to the public to know when a defendant is indicted. Therefore, there is no method of knowing when an indictment is filed.
This secretive proceeding hinders a surety’s ability to ascertain the date of arraignment. Although it is possible for a surety to find out the date of a defendant’s arraignment (by, for example, looking in the New York Law Journal or obtaining court arraignment dockets), the Legislature has decided that the best way to ensure that the surety fulfills its obligation to produce defendant would be to notify the surety of the arraignment date and assigns this “nondelegable” duty to a “superior court.”
The failure to give proper notice to the surety requires the court to vacate the judgment of forfeiture (see, People v Salabarria, 121 AD2d 438, supra;[12] and dicta in the Florida and Georgia cases cited above). As the violation of the statutory notice requirement goes to the very essence of the surety’s obligation to produce the defendant, this court finds that it should exercise its inherent power to vacate the judgment.
The motion to vacate and set aside the judgment of forfeiture is granted.

. The court has not been provided with the minutes of this proceeding and has not been informed of the date when this occurred.

. No affidavit of service has been supplied in the People’s affirmation in opposition. People’s exhibit A does not indicate the address to which the notice was mailed. Surety denies that defendant or his counsel ever received this notice.

. This appears to be the People’s position.

. This appears to be surety’s claim for the first time set forth in the reply affirmation. The original motion does not state the basis or authority for making this motion.

. It is interesting to note that the People cited this case for other purposes but still argue that this motion is a remission motion.

. Parts of surety’s reply affirmation seem to be taken from this case without any attribution.

. By Kangs County procedure the motion is heard by this court and not by the court which ordered the forfeiture.

. This seems to be surety’s claim in the reply affirmation. Surety cites no case for the due process notice claim.

. The lack of mention of notice to the surety of the date of defendant’s arraignment in this case can be explained in many different ways. First, defendant Salabarria actually appeared at arraignment and, therefore, no forfeiture occurred at that time. Secondly, arraignment in the Salabarria case (supra) took place in 1979, a time when the statute did not require notice of arraignment to a cash depositor of bail (see, People v Castro, 119 Misc 2d 787, supra). In addition, there is no indication in the record on appeal that the surety ever argued the issue to the appellate court.

. Citation of cases supporting this proposition can be found in footnote 71 of 58 Am Jur 2d, Notice, § 28. The court would add the following citations: In re I.K.E.W. (724 NE2d 245, 249-259 [Ind]), Villwock v Insurance Co. (22 Va App 127, 133, 468 SE2d 130, 133), Miller v Culver Community Schools Corp. (493 NE2d 181, 182 [Ind]), and Becker v Crown Cent. Petroleum Corp. (26 Md App 596, 615, 340 A2d 324, 336).

. The term “personal service” in the context of this provision means any service that provides actual notice to the surety. This includes mailing a notice to the surety at the address listed in the bond. In this respect it is noted that the CPLR is not applicable to the Criminal Procedure Law (see, People v Knobel, 94 NY2d 226, 229-230; People v Holden, 260 AD2d 233, 234; People v Anderson, 252 AD2d 399, 400).

. The only difference between this case and the Salabarria decision (supra) is that in this case the court failed to notify the surety as required by law, and in Salabarria the court failed to notify the defendant as required by law.