**2016 UT 5**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

THE ROYAL CONSULATE OF THE KINGDOM OF SAUDI ARABIA,
*Petitioner,*

*v.*

THE HONORABLE DEREK PULLAN,
*Respondent.*

No. 20150643
Filed January 15, 2016

Attorneys:
Ronald J. Yengich, Salt Lake City, for petitioner

Brent M. Johnson, Salt Lake City, for respondents

PER CURIAM:

¶ 1   Monsour Al Shammari, who is a citizen of Saudi Arabia, was arrested and charged with rape.  Bail was set at $100,000, and the Royal Consulate of Saudi Arabia provided the cash funds to post bail.  Shortly thereafter, Mr. Al Shammari attempted to cross the border into Tijuana, Mexico and was detained by the United States Customs and Border Patrol.  When he failed to appear for a scheduled hearing in the criminal case, the district court ordered the cash bail forfeited without providing notice to the Consulate. Mr. Al Shammari was extradited to Utah, and he moved to set aside the order of forfeiture.  Among the arguments he presented in his motion, he asserted the forfeiture was procedurally deficient because the Consulate, as a "surety," was entitled to notice.  The district court determined that his failure to appear was willful and that the Consulate was not entitled to notice because it was not a surety for purposes of Chapters 20 and 20b of Title 77 of the Utah Code.  It ordered the bail forfeited.

¶ 2   The Consulate has filed a petition for extraordinary relief with this Court challenging the district court's determination that it was not a surety and was not entitled to notice.  It also contests the correctness of the district court's conclusions that Al Shammari's failure to appear was willful and that forfeiture of bail was

appropriate. We conclude the Consulate was not a surety that was statutorily or constitutionally entitled to notice, and we decline to reach its arguments regarding the merits of the forfeiture ruling because it lacks standing. Accordingly, we deny its petition for extraordinary relief.

¶ 3 Section 77-20-4 of the Utah Code designates five mechanisms for posting bail, only one of which involves a "written undertaking with . . . suret[y]." UTAH CODE § 77-20-4(1)(b).[1] Section 77-20-5 then describes the two types of sureties who may provide a written undertaking: (1) a for-profit bail business; or (2) an individual or entity that is not in that business and who must be a real or personal property holder with a "net worth of at least twice the amount of the undertaking, exclusive of property exempt from execution." *Id.* § 77-20-5(1). Chapter 20b of Title 77 separately provides that a "surety be given notice of [a] nonappearance" of the defendant, *id.* § 77-20b-101(1), and that it be provided a period of six months to produce the defendant before a forfeiture action is commenced on the bond provided by the surety, *see id.* § 77-20b-102.

¶ 4 In other words, the statutory scheme recognizes two different forms of guarantee of a defendant's appearance: (1) an undertaking tendered by an individual or entity that ordinarily will be accompanied by the posting of a bond; and (2) bail by cash or an equivalent form of payment. In the case of written undertakings by sureties, those sureties assume distinct obligations to ensure defendants' appearances and are afforded corresponding opportunities to satisfy their obligations prior to forfeiture hearings. Sureties also submit themselves to the "jurisdiction of the court and irrevocably appoint[ ] the clerk of the court as [their] agent upon whom any papers affecting [their] liability on the undertaking may be served." *Id.* § 77-20-5(3).

¶ 5 Conversely, when the full amount of bail is satisfied by funds deposited with the court, defendants' appearances are secured directly by those funds, with no independent obligations imposed on any third persons or entities who happen to provide the funds. The statutory scheme for bail does not concern itself with the

---

[1] The others describe various means of making a direct payment of the full amount of bail—cash, credit card, and debit card—but also allow for the possibility of a "written undertaking . . . without suret[y]." UTAH CODE § 77-20-4(1)(a)–(c).

manner in which the defendant obtains the funds for cash bail or the nature of the relationship between the defendant and another provider, if any, of the funds. The person posting the cash bail may be merely functioning as a courier for the defendant's own funds, may be providing the funds out of friendship or familial loyalty, or may have extracted some agreement that may or may not be legally enforceable as a private contract.[2] In that light, the absence of a process for verifying the identity of the owner of the cash necessitates an assumption that cash bail is the property of the defendant or is provided on his behalf through a private agreement, and the court has no obligation to investigate the nature of that agreement or the identity of the parties to it. Nor does it possess any practical mechanisms for doing so.

¶ 6   This statutory scheme appears to be consistent with the historical distinction between cash bail and a surety's bond that has been described in decisions in other jurisdictions. *See, e.g., State v. Paul*, 976 P.2d 1272, 1274 (Wash. Ct. App. 1999); *State v. Echols,* 850 S.W.2d 344, 345–47 (Mo. 1993); *People v. Castro*, 464 N.Y.S.2d 650, 654-55 (Sup. Ct. 1983). Those decisions have observed that the common law deemed a surety to be personally liable for guaranteeing the appearance of the defendant. *See Castro,* 464 N.Y.S.2d at 655. Payment of a financial penalty eventually was substituted for the harsher consequence of incarceration of the surety in the event of forfeiture, and modern regulations pertaining to sureties incorporate and perpetuate that process and its premises. *See id.* By contrast, the

---

[2] *In re Marriage of Bralley*, 855 P.2d 1174, 1178 (Wash. Ct. App. 1993), provided an interesting illustration of the possibilities:

> X, being in jail on a bench warrant, and desiring $1000 for cash bail may call Y and ask Y to (1) retrieve X's $1000 from a mayonnaise jar buried in X's backyard; (2) contact Z and borrow $1000 from Z; (3) loan X $1000 of Y's money; (4) repay a $1000 loan that Y may owe to X; (5) make a gift to X of $1000 or the use of $1000 pending X's completion of his obligation to the court; (6) sell X's personal property for $1000. In any of these and a myriad of other possible circumstances, Y may bring $1000 to the jail and obtain a receipt in her name. The receipt merely shows that money was received . . . ; it does not evidence whose "property" the bail money is.

same decisions note that the posting of cash to ensure a defendant's appearance is a more recent statutory mechanism that functions as an impersonal tangible substitute for the requirement of a personal guaranty.[3] *See id.*

¶ 7   In this case the Consulate posted cash bail, and it has failed to demonstrate that it qualifies as a surety under the applicable statutes. The Consulate is not a for-profit bail business, and it failed to satisfy the formal statutory requirements for establishing status as a surety by "justify[ing] by affidavit upon [an] undertaking" regarding its property and net worth, as required by section 77-20-5(2) and by expressly submitting itself to the jurisdiction of the court under section 77-20-5(3). Accordingly, it did not act as a surety and was not entitled to notice under the statutory scheme.

¶ 8 For similar reasons, the Consulate's constitutional arguments also fail. The statutory notice requirements coincide with a scheme that comprehensively regulates the process by which a person or entity obtains recognition as a surety and by which that surety undertakes obligations in relation to the defendant's appearance.[4] Conversely, any obligations arising from the provision of the funds for cash bail are private in nature, between the provider and the defendant, and not between the provider and the court. And the absence of any duty to inquire into the true source of funds provided as cash bail necessarily obviates any obligation for the

---

[3] *State v. Echols* summarized the difference as follows:

> By observing the distinction between a surety bond and a cash bond, the basis for the differences . . . related to the two forms of bail become rational. The depositor of bail money has no obligation for the custody or appearance of the defendant. The money deposited is the security for the appearance of the defendant. This is not to say that one who posts cash bail for another cannot cause the defendant to surrender . . . . However, the law places no duties or obligation on one who posts a cash bail for another for the appearance of the defendant when required.

850 S.W.2d at 347.

[4] We need not address the question of whether sureties possess an independent due process entitlement to notice.

court to provide notice of events occurring in the case after bail has been deposited. Accordingly, the Consulate has failed to demonstrate that it possessed a due process entitlement to notice of the circumstances that led to the forfeiture of the cash bail in this case.

¶ 9   Finally, we decline to address the Consulate's arguments that the district court erred in determining the factual prerequisites for forfeiture had been satisfied.  Because the Consulate is not a party to the criminal proceedings and lacked any statutory or constitutional entitlement to notice of Mr. Al Shammari's failure to appear, it likewise lacked standing to challenge the district court's forfeiture ruling.

—————————