Chief Judge Fuld.
The plaintiff, a teacher and member of the New York State Teachers Retirement System, brings this derivative action on his own behalf and on behalf of all other members of the System against the seven members of its governing body, known as the Retirement Board, and the National Commercial Bank and Trust Company.
The complaint alleges that there is an unlawful conflict of interest between the System and the bank arising from the fact that defendant Frank Wells McCabe is both chairman of the finance committee of the board and also the bank’s president and chief executive officer. More specifically, the plaintiff charges that, in violation of statute, the bank has had dealings and relationships with the System, as the result of which it has received various fees and other emoluments and has derived profits therefrom, all assertedly in violation of subdivision 3 of section 508 of the Education Law. The complaint sought injunctive relief and an accounting for losses suffered by the *529 System and for profits realized by the bank as a result of these transactions.
Each of the defendants moved to dismiss the complaint, pursuant to CPLR 3211 (subd. [a]), for failure to state a cause of action, and the court at Special Term granted the motions. The Appellate Division agreed that the complaint was properly dismissed but modified the judgment by providing that such dismissal was to be without prejudice to service of an amended complaint for judgment preventing the deposit of the System’s funds with the bank as long as any officer, director or employee of the bank was a member of the board. Only the plaintiff Brigham appealed to our court from that disposition, and he asks us to “ grant [him] summary judgment ” on the ground that the statute imposes liability regardless of fraud or bad faith.
A close relationship has existed between the bank and the System since the time the System was originally set up in 1921. The then president of the bank was appointed as one of the original members of the Retirement Board by the Board of Regents (see Education Law, § 504, subd. 2) with the knowledge and understanding of the Regents that his banking connection would be utilized and, ever since then, the current executive officer of the bank has served as chairman of the finance committee. Indeed, until July, 1965, when all dealings between the board and the bank were terminated, the bank was closely and continuously involved in the financial affairs of the board.
The bank, as sole depository for the System’s funds, maintained two accounts, an active expense account in relatively small amounts, for which no charges were imposed by the bank, and a ‘ ‘ general fund account ’ ’. This latter account was a non-interest-bearing checking account which the System used both as a depository to store its incoming cash until such time as it could be invested and to cover out-going benefit checks to its members. The incoming cash was in the form of small amounts, withheld regularly from the pay of the System’s members and large, twice-a-year state-aid payments of 70 to 80 million dollars. The System wrote over 20,000 checks a month, totaling between 3 and 4 million dollars. Between 1957 and 1963, the average end-of-month balance in the account was *530 approximately 5 million dollars, which the State Insurance Department found was substantially in excess of the percentage of funds held uninvested by similar retirement systems.[1]
In addition to acting as a depository for its funds, the bank provided other services for the System, including the recommendation and administration of its investments in conventional mortgages and the placing of orders with brokers for the purchase and sale of securities. The bank received no fees for any of its services from the System. However, legal and appraisal fees were sometimes collected from the mortgagors, and the bank allegedly made money from these transactions.
As indicated above, the court at Special Term dismissed the complaint. In so doing, it found that there was no illegality in the maintenance of the account with the bank since the “Legislature did not intend in enacting section 508(3) of the Education Law to prohibit the deposit of the funds of the System in a bank of which an executive officer is a member of the Retirement Board ”.[2] The court found that the remaining allegations were, at best, “ conclusions of fact without any substantiation either in the complaint or in the answering affidavits ”. The Appellate Division, although it also dismissed the complaint, differed with Special Term in holding that the deposit of the System’s funds in the bank constituted a violation of the Education Law. Reasoning that the System’s bank deposit constituted a “ loan ” to the bank and that subdivision 3 of section 508 of the Education Law prohibits a member of the board from “ borrowing ”, the Appellate Division concluded that the deposits by the defendants offended against the statutory proscription.
It is true that the relationship between a bank and its depositor is one of debtor and creditor (see, e.g., His Majesty’s Treasury v. *531 Bankers Trust Co., 304 N. Y. 282; Sundail Constr. Co. v. Liberty Bank, 277 N. Y. 137) in that there is a contractual obligation to pay money. This is, however, a far cry from saying that the depository bank is a “ borrower ’ ’ within the sense of the statute involved. Quite obviously, there may be a “ debt ” without there being a “ loan ”. To use a simple example, a “ debt ” arises where a buyer agrees to pay a seller for goods at some time after delivery but by no stretch of reason could that be deemed a ‘ ‘ loan ’ ’. The latter term, reasonably understood, means “ something lent for the borrower’s temporary use on condition that it or its equivalent be returned ”. (Webster’s Third New International Dictionary [1961].) It is something very different from a “deposit,” which Webster’s defines as “ something placed (as in a bank or in someone’s hands) for safekeeping”. In other words, a “loan” requires an intentention to place the funds at the borrower’s disposal, while a “ deposit ” is merely a convenient means of holding them for one’s own use. (See, e.g., Chapman v. Comstock, 134 N. Y. 509.)
This difference has always been recognized in the law. For instance, although subdivision 2 of section 247 of the Banking Law declares that the trustee of a savings bank may not himself, or as agent or partner of another, “ directly or indirectly borrow or use any of the [bank’s] funds ”, section 236 specifically permits the “ deposit ” of funds in a bank in which one of the trustees is a partner. Similarly, section 235 places strict restrictions on the type of loans which may be executed by a savings bank, yet it has been held that even an interest-bearing bank deposit secured by a bond is not an investment covered by that section. (See Erie County Bav. Bank v. Coit, 104 N. Y. 532, 538.)
These provisions of the Banking Law are of interest not only because of their close analogy to the situation under consideration but also because subdivision 1 of section 508 of the Education Law itself recites that the investments of the System shall be limited to those “ in which the trustees of a savings bank may invest the moneys deposited therein as provided by law.” It would be highly unreasonable to hold that, although a bank deposit is not a “ loan ” when made by a savings bank, it is one when made by the System.
*532 While it is true, as urged, that subdivision 3 of section 508 also prohibits the ‘ ‘ use ’ ’ of the System’s funds by a corporation with which a member of the board is connected, any doubt about the propriety of maintaining the bank account is resolved by the exception which is written into that subdivision. What is overlooked is that the statute explicitly sanctions such use of the System’s funds where, to cull from the provision, it is “ to make such current and necessary payments as are authorized by the board ”. No purpose could be served by this exception other than to allow the bank to hold the funds which the System would draw upon to meet its expenditures. It follows, therefore, that the deposit of funds is not the type of “ use ” prohibited by the statute.-
In a case involving an alleged breach of a fiduciary duty, courts must, of course, look through form to substance. A balance in a checking account, grossly in excess of that reasonably necessary to handle the ordinary expenses of the System, might well constitute evidence that the account was nothing more than a device to disguise what in truth was a substantial interest-free loan to the bank. There is, though, no support whatever for such a finding. In fact, the plaintiff does not claim that the defendants were guilty of any bad faith or that a loan lurked beneath the facade of a bank account, his sole premise being that the board’s act of depositing money with the bank was absolutely prohibited by statute. As we have sought to demonstrate, the statute may not reasonably be read to support such a conclusion.
A second aspect of the bank’s relationship with the System, which the plaintiff claims violated the provisions of the Education Law, was the collection of fees from its customers for handling applications for mortgages from the System. It is the plaintiff’s contention that the bank’s receipt of such fees violated the portion of subdivision 3 of section 508 which prohibits a member or employee of the board “as such” from “ directly or indirectly receiving] any pay or emolument for his services. ” This provision was clearly designed to protect the System from having to pay, directly or indirectly, for the services rendered to it. If services are rendered to third parties, and are paid for by them, this has cost the System nothing, and the statutory provision is not offended. As to the services *533 which were performed for the System, the papers clearly demonstrate that no fees were ever paid.
The plaintiff also complains that the bank’s participation in the purchase and sale of securities for the System violates the procedure required by the statute and that the bank was thus able to allot lucrative brokerage commissions among its friends. In this instance, reliance is placed on subdivision 1 of section 508, which provides that, once the board reaches a decision on a matter or investment policy, it shall ‘ ‘ direct the custodian to so invest the moneys or convert, or sell the securities. ” This provision, according to the plaintiff, is designed to designate the head of the State Division of the Treasury— who is ex officio the custodian of the System — as an “ independent and impartial ” authority with the sole power to select the brokers.
The selection of brokers to handle large and complex securities transactions is undoubtedly a task requiring a large amount of knowledge, experience and judgment. Certainly; it is not a matter to be left to a mechanical process or to an official whose duties are purely ministerial. We should reasonably expect that the necessary recommendations and decisions on the subject should come from an expert, such as Mr. McCabe, who fills the position on the board which had long been reserved for the “ executive officer of a bank ” (§ 504; subd. 2). On the other hand, it is difficult, if not impossible; to interpret the statute in such a way as to give discretion and authority to the State Treasurer whose duties (in the other aspects of his office) are of a clearly ministerial nature (see Tax Law, § 170). He may not disburse any of the System’s funds except “ upon warrants signed by a member of the retirement board, or an official thereof, authorized to do so ” (Education Law, § 507, subd. 3). It seems clear that the only function he is permitted to perform with respect to the System’s investments is the issuance of checks in the precise manner spelled out by the warrant and in the exercise of physical custody over the security certificates. Everything negates the idea that,he is given sole authority to determine to whom, and in what manner, checks will be drawn and transactions executed.
The order, insofar as appealed from, should be affirmed, without costs.

. However, procedures were adopted, in early 1963, which resulted in a steady decline — to a very small amount — in average daily balances.

. Subdivision 3 of section 508 of the Education Law provides, in part, as follows:
“ Except as herein provided, no member nor employee of the retirement board * * 55 directly or indirectly, for himself or as an agent or partner of others, nor a corporation of which he is an officer, stockholder or member, shall borrow any of its funds or deposits or in any manner use the same except to make such current and necessary payments as are authorized by the board ”.