**MIDLAND INSURANCE COMPANY, Interpleading Plaintiff,**

v.

**Dr. Charles FRIEDGOOD, Eva Friedgood, Chase Manhattan Bank, N.A., John Joseph Sutter, Esq., the United States Internal Revenue Service, and Steven J. Massey, Esq., individually and as members of a partnership known as Austin & DuPont, Interpleaded Defendants.**

No. 77 Civ. 4621 (CHT).

United States District Court, S.D. New York.

Jan. 5, 1984.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for interpleaded defendant Internal Revenue Service; Mary C. Daly, Asst. U.S. Atty., New York City, of counsel.

Paul Kotch, New York City, for interpleaded defendant Committee to Free Dr. Charles Friedgood.

OPINION

TENNEY, District Judge.

This is an interpleader action commenced in 1977 by the Midland Insurance Company ("Midland") to determine the rights of the interpleaded defendants in monies posted to secure a bail bond for Dr. Charles Friedgood. The Internal Revenue Service ("IRS") and the Committee to Free Dr. Charles Friedgood ("Committee") are the only claimants remaining in this action. The IRS has moved for summary judgment; the Committee opposes this motion, and also moves for summary judgment. For the reasons set out below, both motions are denied. Further, the Committee has not succeeded in showing that there is a genuine issue of fact to be tried, and its claim is dismissed on the merits.

*Background*

Dr. Charles Friedgood's wife was murdered in 1975. Dr. Friedgood, who was indicted for the murder, was released on bail pending the trial. To meet bail, Dr. Friedgood posted a bond issued by Midland in the face amount of $250,000. Various items of collateral were used to secure the bond, and the evidence indicates that on at least one occasion certain of the original collateral was replaced by new collateral. *See* Deposition of Kevin W. Bartley, sworn to Apr. 22, 1981 ("Bartley Dep."), Exh. D to Memorandum of Law of the IRS in Support of its Motion for Summary Judgment ("IRS Memorandum"), at 22, 41–42. After Dr. Friedgood's conviction, the bond was exonerated and Midland instituted this interpleader action in state court to resolve

a number of claims to the collateral which remained in its custody. The IRS then removed the action to federal court under 28 U.S.C. § 1444 (1976 & Supp. V 1981).[1] Only the two remaining claims—that of the IRS and that of the Committee—are at issue here.[2] The interpleaded fund now consists of $145,000.

The IRS was named as a defendant in Midland's interpleader action because in July 1977 it made a jeopardy assessment of approximately $688,000 against Dr. Friedgood for the tax years 1961 to 1964 and made a demand for payment. Concurrently, it filed a Notice of Federal Tax Lien with the Nassau County clerk in the amount of $675,568.30. *See* Answer of the IRS, filed Feb. 3, 1978, 77 Civ. 4621 (CHT). The IRS argues that its lien attaches to the interpleaded fund because Dr. Friedgood received $145,000 as a gift or loan from Harriet Larson ("Larson"),[3] *see* IRS Memorandum at 7, and used that money to secure his bail bond.

It is undisputed that in August 1975 Larson transferred $155,000 [4] by wire from Copenhagen to the account of Austin & DuPont, the law firm handling Dr. Friedgood's defense. *See* Affidavit of John Palmer in Support of the Motion of the IRS for Summary Judgment, sworn to June 29, 1981 ("Palmer Aff."), ¶ 3; Memorandum of Law of the Committee to Free Dr. Friedgood in Opposition to the Motion for Summary Judgment of the IRS ("Committee Memorandum") at 1; IRS Memorandum at 2. There is, however, no evidence as to the

---

1. In May 1980, Midland paid the sum of $145,000 into court pursuant to this Court's order. Order filed Mar. 19, 1980, 77 Civ. 4621 (CHT).

2. In 1979, the IRS and Dr. Friedgood were the only remaining interpleaded defendants. Dr. Friedgood, who had not answered Midland's complaint, prepared an affidavit in August 1979 which stated that he was "prepared to conclusively show to this Court, at a hearing and/or trial, that the monies involved herein, (i.e. $145,000.00) are funds that were borrowed by him from assorted acquaintances, patients and others believing in his innocence." Affidavit of Charles Friedgood, sworn to Aug. 21, 1979, ¶ 6.

 Pursuant to this Court's order, a list of contributors was filed with the Court in a timely

fashion by Suzanne Precker ("Precker"), "chairwoman of the ad-hoc 'Committee to Free Dr. Charles Friedgood.'" Reply to Order/Endorsement of March 17, 1980, filed June 23, 1980, 77 Civ. 4621 (CHT) ("Reply to Order"). It is under the auspices of this Committee that the IRS's claim to the interpleaded fund is now being contested.

3. The IRS states, and the Committee does not dispute, that Larson was Dr. Friedgood's mistress, and the mother out-of-wedlock of two children by Dr. Friedgood. IRS Memorandum at 2.

4. *See infra* note 6.

nature of Larson's intent in making this transfer and, more specifically, there is no evidence as to whether she had the intent to make either a gift or a loan.[5]

The Committee concedes that Austin & DuPont paid over $145,000 of these transferred funds[6] to Midland as collateral for Dr. Friedgood's bail bond. *See* Committee Memorandum at 1. A copy of a receipt issued by Midland for collateral in that amount[7] has been submitted by the IRS in conjunction with this motion. *See* Exh. A to Palmer Aff. Although this Court does not have before it a complete record of all the transactions relating to the Friedgood bail bond, no documentary evidence has been presented to indicate that this particular collateral was ever removed from the account. *See* Bartley Dep. at 34; *see also id.* at 9–10.

The Committee, nevertheless, lays claim to the interpleaded fund on the ground that its members raised approximately $145,-000[8] which was delivered to Newman, the bailbondsman handling the Friedgood bond, and used to secure that bond. Newman is now deceased, and neither his estate, *see* Letter to Mary Daly from James M. Newman (Aug. 4, 1981) ("Letter from James

Newman"), Exh. B to IRS Memorandum, nor the records of Midland on the Friedgood bond, *see* Bartley Dep. at 34; *see also id.* at 9–10, reflect the contribution of collateral by any such committee or organization. No receipts were issued by Newman to the Committee. *See* Committee Memorandum at 2. The Committee contends, however, that the interpleaded fund consists of monies which were raised by Committee members, contributed to Newman, and used to secure the bond.

*Discussion*

■ Summary judgment in favor of a moving party is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Rule") 56(c). The movant bears the burden of demonstrating the absence of any genuine issue of material fact, *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir.1982). Furthermore, ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the

**5.** *See infra* note 11 and accompanying text.

**6.** The firm of Austin & DuPont retained $10,000 of the $155,000 as compensation for its services. Palmer Aff. ¶ 4.

Mr. Palmer states in his affidavit that the $10,000 was paid to the firm "with the full consent of Doctor Charles Friedgood." *Id.* Although the quoted language *suggests* that Dr. Friedgood was vested with certain property rights or control, this innuendo cannot be accorded any substantial weight on this motion. First, the statement refers to Dr. Friedgood's action regarding the $10,000—the giving of consent to its use—and does not pertain to the intent with which *Larson* transferred the $10,-000 to Austin & DuPont. Second, the statement, when carefully construed, does not address the $155,000 as a whole, but only $10,000 of that money. It is the remainder of the money—the $145,000—with which the Court is concerned here.

**7.** The handwritten matter on the copy of the receipt submitted to the Court is illegible. The undisputed testimony, however, is that the receipt was signed by John Palmer for Austin & DuPont, and dated August 20, 1975. The byline

was said to be filled in by Al Newman ("Newman"), the bailbondsman handling the Friedgood bond. *See* Bartley Dep. at 30–32.

**8.** Except for a list of 33 contributors drawn up by Suzanne Precker and Dr. Friedgood on or around June 1980, *see* Reply to Order, *supra,* the only evidence that there were in fact contributors is found in the deposition testimony and affidavits of those who allegedly collected and contributed money, and who are now seeking its return. *See* Exhs. A–KK to Committee Memorandum. Thus, there is no evidence from any disinterested source to corroborate the claim that specific contributions were actually made. Furthermore, no contemporaneous lists showing the names of contributors or the amounts contributed have been produced. One of the only records of this kind which is said to have been compiled was completely destroyed by the contributor who prepared it, after she was notified that she would be subpoenaed by the government as a deposition witness in this case. She testified at that deposition that she had destroyed the records out of fright. *See* Deposition of Anna Harvey, sworn to Mar. 30, 1980 ("Harvey Dep."), Exh. GG to Committee Memorandum, at 29–31.

party opposing the motion. *Project Release* at 968; *see Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608; *One Tintoretto Painting*, 691 F.2d at 606. In addition, " 'summary judgment is likely to be inappropriate when the issues concern intent.' " *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir.1983) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)); *see* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2727, at 137 (2d ed. 1983) [hereinafter cited as Federal Practice and Procedure]; *see also Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983). Finally, a movant is not entitled to summary judgment merely because the facts he offers appear more plausible than those put forth in opposition, or because the court believes the movant will prevail at trial. *See* 10A Federal Practice and Procedure § 2725, at 104–05; *id.* § 2728, at 179–86. This is true even where, as here, both parties have moved for summary judgment. *Id.* § 2725, at 105–06.

Nevertheless, once either movant has made a showing under Rule 56(c), the non-movant must come forth with " 'concrete particulars,' " *Project Release*, 722 F.2d at 969 (qouting *Research Automation Corp.*, 585 F.2d at 33), and may not rely on mere conclusory allegations, *see* Rule 56(e); *Project Release*, 722 F.2d at 968; *Flaherty*, 713 F.2d at 13, or "make a secret of his evidence, holding it close to his chest until the trial." *Research Automation Corp.*, 585 F.2d at 33.

■ Under the law of New York, monies received by a court or other authorized agency in connection with a cash bail or a partially secured bail bond are to be refunded upon exoneration of the bail "to the person who originally deposited such money." N.Y.Gen.Mun.Law § 99–m (McKinney Supp.1983–84). It is settled that cash deposited by a third person in lieu of bail

for a defendant remains the depositor's money, and does not become the defendant's money except for the purposes of the criminal proceeding. *See Balter v. County of Wyoming*, 70 A.D.2d 1051, 1051, 417 N.Y.S.2d 555, 555 (Fourth Dep't 1979); *People v. Castro*, 119 Misc.2d 787, 795–96, 464 N.Y.S.2d 650, 657 (Sup.Ct.1983); *Cogliano v. Ippolito*, 16 Misc.2d 95, 96, 182 N.Y.S.2d 775, 776 (Sup.Ct.1959); *Cohen v. Bruere*, 96 Misc. 609, 612–14, 162 N.Y.S. 75, 77–78 (Sup.Ct.1916), *aff'd*, 179 A.D. 884, 165 N.Y.S. 1080 (Second Dep't 1917).

In this case, bail was posted by means of an insurance company bail bond rather than by cash. *See* N.Y.Crim.Proc.Law § 500.10(10), (16) (McKinney 1971). Although there are historical and practical distinctions between the bail bond and cash bail,[9] this Court finds that those distinctions do not counsel against applying, by analogy, the rule regarding title to cash bail in cases where the issue is the title to *collateral* used as security for a bail bond. Indeed, because of the legal burden borne by the insurance company as surety-obligor, a rule that protects the title of those persons who furnish collateral as against the rights of the principal—that is, the defendant on whose behalf the bond was issued—seems particularly appropriate. Thus, this Court finds that the collateral deposited by a third person or persons to secure the bail bond of a defendant does not become the property of the defendant, but remains the property of the depositors as a matter of law.

■ In this case, the interpleaded defendants disagree as to who, in fact, was the depositor of those monies which remain in the interpleaded fund. In an interpleader action, each claimant must succeed in establishing his right to the property by a preponderance of the evidence. 2 J. Weinstein, H. Korn & A. Miller, New York Civil

---

**9.** See discussion in *Castro*, 119 Misc.2d at 792–95, 464 N.Y.S.2d at 655–56. The bail bond was a creature of the common law. The surety is bound to produce the principal (the defendant), and makes a promise to make a payment in the future, should the principal fail to appear. *Id.; see also* N.Y.Crim.Proc.Law § 520.20(2)(e), (f)

(McKinney Supp.1983–84). Cash bail, by contrast, is a statutory creation, under which the authorities hold monies in trust for the defendant subject to the defendant's failure to appear. *Castro*, 119 Misc.2d at 792–95, 464 N.Y.S.2d at 655–56.

Practice § 1006.12 (1982) [hereinafter cited as New York Civil Practice]; *cf. Dist. Attorney of Nassau County v. Farrington,* 56 Misc.2d 904, 908, 290 N.Y.S.2d 132, 136 (Sup.Ct.1967); 7 Federal Practice and Procedure, *supra,* § 1714, at 442 (1972). Thus, while the claims of interpleaded defendants may be disposed of on summary judgment in appropriate cases, *see* 7 Federal Practice and Procedure, *supra,* § 1714, at 442 & n. 27 (1972 & Supp.1982), the dismissal of all claims but one does not entitle the remaining claimant to judgment. *See* 2 New York Civil Practice, *supra,* § 1006.12; *Farrington,* 56 Misc.2d at 908, 290 N.Y.S.2d at 136; *cf.* 7 Federal Practice and Procedure, *supra,* § 1714, at 442. The burden on the sole remaining claimant is unchanged by the elimination of all other claims. The claimant must still meet the standard of proof applicable when there are several claimants.[10] This rule is of particular relevance here since this Court finds that the Committee's claim must be dismissed, leaving the IRS as the sole remaining claimant.

■■■ The IRS would have this Court hold that its tax lien as against Dr. Friedgood attaches to the interpleaded fund because it is the property of Dr. Friedgood for the purposes of § 6321 of the Internal Revenue Code. 26 U.S.C. § 6321 (1976). A tax lien under § 6321 extends only so far as the taxpayer's rights in that property. *United States v. Fontana,* 528 F.Supp. 137, 143 (S.D.N.Y.1981); *General Motors Acceptance Corp. v. Wall,* 239 F.Supp. 433, 435 (W.D.N.C.1965). In addition, state law determines the existence and extent of property to which a lien under § 6321 may attach. *United States v. Durham Lumber Co.,* 363 U.S. 522, 526, 80 S.Ct. 1282, 1284, 4 L.Ed.2d 1371 (1960); *Metropolitan Dade*

*County v. United States,* 635 F.2d 512, 514 (5th Cir.1981); *Fontana,* 528 F.Supp. at 143. The IRS contends that under the law of New York the $145,000 in question became the property of Dr. Friedgood when Larson transferred funds in this amount to "Dr. Friedgood's agents, Austin and Du-Pont, without restriction on its use by Dr. Friedgood." IRS Memorandum at 7.[11] The IRS argues that by this act Larson was necessarily making a loan or a gift, either of which, the IRS claims, would subject the property to the federal lien.

■■■ There is no presumption of a gift in New York. *Rabinof v. United States,* 329 F.Supp. 830, 839 (S.D.N.Y.1971). Thus, the burden of proving the existence of a valid *inter vivos* gift is on the party asserting that a gift was made. *Clarkson Co. v. Shaheen,* 533 F.Supp. 905, 921 (S.D.N.Y. 1982); *Mortellaro v. Mortellaro,* 91 A.D.2d 862, 863, 458 N.Y.S.2d 390, 391 (Fourth Dep't 1982). To meet this burden, a party must show: (1) the intent of the donor to give a gift, (2) the delivery of the property pursuant to this intent, and (3) acceptance of the property by the donee. *Clarkson Co.,* 533 F.Supp. at 921; *In re Estate of Szabo,* 10 N.Y.2d 94, 98, 176 N.E.2d 395, 396, 217 N.Y.S.2d 593, 595 (1961); *In re Estate of Cristo,* 86 A.D.2d 700, 701, 446 N.Y.S.2d 555, 556 (Third Dep't 1982). The party's proof will be carefully and critically scrutinized. *See In re Estate of Kelsey,* 29 A.D.2d 450, 456, 289 N.Y.S.2d 314, 320 (Fourth Dep't 1968), *aff'd,* 26 N.Y.2d 792, 257 N.E.2d 663, 309 N.Y.S.2d 219 (1970); *Mortellaro,* 91 A.D.2d at 862, 458 N.Y.S.2d at 390.

■■■ Whether or not a transaction constitutes a loan is essentially a factual ques-

---

**10.** This rule is consistent with New York's policy in favor of utilizing "unclaimed property for the benefit of all the people of the state." N.Y. Aband.Prop.Law § 102 (McKinney 1944); *see Farrington,* 56 Misc.2d at 908, 290 N.Y.S.2d at 136.

**11.** The government's statement that the money was transferred "without restriction on its use by Dr. Friedgood" can only be taken to mean, in light of the evidence, that Larson did not specify *how* Dr. Friedgood was to use the money. There is no evidence that she intended it to be

used without regard to any property interest she may have had in those funds.

The IRS, in a conclusory fashion, refers to Austin and DuPont as the "agents" of Dr. Friedgood and implies that the establishment of this fact would be of significance on this motion. The mere fact that funds were transferred to an agent of Dr. Friedgood, however, would not be dispositive any more than mere delivery of funds to Dr. Friedgood himself would be dispositive. Rather, the dispositive issue is whether the intent to make a gift or a loan accompanied the transfer.

tion which is answered with reference to the context in which the transaction occurred. However, as a general matter, a critical issue in the determination of whether a transaction was a loan is whether the *intent* to make a loan was present. In *Yezek v. Delaware, L. & W.R. Co.*, 176 Misc. 553, 28 N.Y.S.2d 35 (Sup.Ct.1941), it was stated that

> [t]o constitute a loan "one party transfers to the other a sum of money which that other agrees to repay absolutely * * *. If such be the *intent* of the parties, the transaction will be considered a loan without regard to its form." ... 66 C.J. 181; *In re Grand Union Co.*, ... 219 F. 353, 356 [ (2d Cir.1914) ].

176 Misc. at 554, 28 N.Y.S.2d at 36 (emphasis in original). As distinguished from a deposit, for example, in the context of banking transactions, "a 'loan' requires an intention to place the funds at the borrower's disposal, while a 'deposit' is merely a convenient means of holding them for one's own use." *Brigham v. McCabe*, 20 N.Y.2d 525, 531, 232 N.E.2d 327, 330, 285 N.Y.S.2d 294, 298 (1967) (emphasis omitted) (citing *Chapman v. Comstock*, 134 N.Y. 509, 513, 31 N.E. 876, 877 (1892)).

 The IRS relies on the contention that the money transferred to Austin & DuPont was a gift or a loan to Dr. Friedgood,[12] but fails to show that Larson had the intent to make either a gift or a loan. The IRS presents evidence that money transferred to the law firm was indeed paid to Midland, and further evidence that a receipt, endorsed by the underwriter handling the Friedgood bond, was issued in that amount. However, the government makes no showing that the transfer of the funds by Larson was other than an action to secure that bond in her own right.[13] The

government does not produce any evidence that Larson had the requisite intent to make either a gift or a loan, and its contentions to this effect amount to nothing more than speculation. Furthermore, summary judgment is likely to be inappropriate where intent is at issue. *See Schering Corp., supra.* Although the IRS hints that the money deposited by Larson was not, in fact, her own, but rather was money which Dr. Friedgood had surreptitiously channeled to her, *see* Reply Memorandum of the IRS in Further Support of its Motion for Summary Judgment at 6; *see also* IRS Memorandum at 6, no evidence whatsoever is offered in support of this contention. Furthermore, this is not the contention on which the IRS now seeks a judgment. Thus, there is nothing to take this case outside the general rule regarding cash bail—here applied by analogy—that "money deposited [in lieu of bail] by a third person does not vest legal title in the defendant." *Cogliano v. Ippolito*, 16 Misc.2d at 96, 182 N.Y.S.2d at 776. Thus, the motion of the IRS for summary judgment must fail.

 The Committee's motion for summary judgment must also fail. The Committee has produced no evidence to indicate that the alleged contributions of various individuals, including past patients and community members, were ultimately used to secure the bail bond. The Committee concedes that no receipts were issued by Newman to reflect any of the contributions allegedly turned over to him as collateral. *See* Committee Memorandum at 2. Furthermore, there is undisputed evidence that neither the records of Newman, *see id.;* Letter from James Newman, *supra,* nor those of Midland, *see* Bartley Dep. at 34, contain any indication that such monies

---

**12.** The government hints, but does not explicitly state, that Larson's withdrawal of her claim to this fund subsequent to the onset of this interpleader action, *see* Letter to Midland Insurance Company from David B. Bernfeld (Apr. 2, 1981), Exh. A to IRS Memorandum, would support its own claim to the money. This renunciation, however, has no impact whatsoever on the determination of Larson's intent at the time she furnished the monies to Austin & DuPont almost six years earlier. Subsequent to the initia-

tion of this interpleader action, her renunciation would not result in a gift to Dr. Friedgood. It could only result in a relinquishment of the monies to the interpleader fund. Title to the monies is entirely dependent on the outcome of this action, and is not subject to transfer by any interpleaded defendant. *See supra* note 10 and accompanying text.

**13.** *See supra* note 11.

were received and substituted for collateral originally put up as security for the bond.

The Committee's claim has an evidentiary weakness similar to that of the claims rejected in *Fidelity & Deposit Co. v. A to Z Equipment Corp.*, 258 F.Supp. 862 (E.D.N. Y.1966). *A to Z Equipment* was an interpleader action brought by the surety of a bankrupt contractor. The surety had issued a bond on behalf of the contractor, as principal, in conjunction with a contract between the principal and the obligee for the repair of a vessel. When the contractor was subsequently adjudicated a bankrupt, there were 114 unpaid subcontractors. The interpleader action was instituted by the surety to determine the rights of the claimants. The court rejected the claims of two interpleaded defendants who alleged that they had not been paid for goods furnished to the contractor. *Id.* at 864. Both claimants submitted into evidence entries in the contractor's accounts payable ledger reflecting receipt of their invoices for goods ordered. In addition, one of the claimants submitted evidence of a purchase order from the contractor; the other presented his invoice reflecting delivery. The court upheld the disallowance of these claims by a Special Master on the ground that the claimants had shown no evidence of delivery. *Id.* In the present case, the Committee has failed to show that the contributions allegedly made to benefit Dr. Friedgood were actually deposited as collateral for the bail bond, just as the subcontractors in *A to Z Equipment* failed to show that their goods were actually received by the contractor. Therefore, the Committee's motion for summary judgment in its favor is denied.

In addition, the claim of the Committee must be dismissed on the merits. In the context of these motions for summary judgment, the Committee offers nothing more than conclusory allegations. The keystone of its claim—i.e., that monies contributed were actually deposited as collateral for the Friedgood bond—is not sufficiently supported by specific facts to withstand the test of summary judgment. *See SEC v. Research Automation Corp.*, 585 F.2d at 33. Not a single deponent or affiant attested to knowledge regarding the *actual* disposition of the funds once they were allegedly handed over to Newman.[14] Indeed, although there is deposition testimony supporting the Committee's claim

---

14. Thirty affiants submitted virtually identical affidavits in support of the Committee's claim. *See* Exhs. C–FF to Committee Memorandum. The affidavits, the language of which is set out below, in no way indicate that the affiants had any knowledge that monies *collected* for the Friedgood bond were actually used for that purpose.

STATE OF NEW YORK )
 : SS.: Affidavit
COUNTY OF )

I, _____, being duly sworn, deposes and says:

1. That I reside at _____.
2. That in August of 1975, I collected and donated to the "Committee to Free Dr. Charles Friedgood" the sum of _____, dollars in order to obtain a bail bond for Dr. Charles Friedgood.
3. That the bail bond was obtained from Mr. Al Newman, bondsman, of 85 Baxter Street, New York, N.Y. in the amount of $250,000.00 Dollars on August 17, 1975.
4. That this money was not given to me by Dr. Charles Friedgood, nor was it given to him.
5. That no part of the funds that I advanced to the committee have been returned to me to date.

6. That Mr. Al Newman, the bondsman, issued a receipt for the $145,000.00 Dollars to Mr. Alfred DuPont, Esq. of Austin & DuPont, 170 Old Country Road, Minola [sic], New York and not to Dr. Charles Friedgood.

7. That this affidavit is made to induce the United States Federal Court Southern District of New York to order the return of the collateral funds to the committee who advanced the monies necessary to obtain the bail bond.

Subscribed and Sworn to before me this \_\_\_\_\_ day of _____ 1980

_____
 Notary Public

Precker, who had the model affidavit drawn up by a lawyer, *see* Deposition of Precker, sworn to Sept. 18, 1980 ("Precker Dep."), Exh. HH, Committee Memorandum, at 20, 22, also distributed blank affidavits to individuals, *see id.* at 19, whose names and addresses were apparently supplied to her by Dr. Friedgood. *See id.* at 43–44.

As to the use to which the Committee would put the funds should it succeed in this action, Precker testified, "The money, if we do get it

that *Newman* was given monies,[15] the numerous affidavits submitted by the Committee attest simply that monies were contributed to the Committee, and do not vouch that these monies were then passed on to Newman.[16] In the absence of any showing of knowledge regarding the disposition of these contributions, and in the absence of any receipts reflecting the use of such contributions as collateral,[17] the Committee has failed to establish that any genuine issue of material fact exists as between its own claim and that of the IRS. It has thus failed to make a showing which would entitle it to a trial on its factual contentions, and its claim is ripe for review, in light of the undisputed facts, on motion for summary judgment. *See id.* On this review, the Court finds that the Committee's claim must be dismissed.

The IRS may now seek to establish, *inter alia,* that Larson had the intent to make a gift or a loan to Dr. Friedgood when she transferred funds to Austin & DuPont. If the IRS fails to show that the $145,000 became property of Dr. Friedgood that was subject to the lien under § 6321, the interpleaded fund will be subject to the laws of New York regarding unclaimed property. *See supra* note 10.

The motion of the Committee for summary judgment is denied, and its claim is dismissed on the merits. For the reasons discussed, the motion of the IRS for summary judgment is also denied.

So ordered.

---

back from the Government, the primary purpose is to use it for new lawyers and investigators to free Dr. Charles Friedgood." *Id.* at 45.

**15.** *See* Harvey Dep., *supra,* at 21, 38; Precker Dep. at 22–23; Deposition of Rev. Sidney G. Whiteley, sworn to Sept. 18, 1980, Exh. II, Committee Memorandum, at 8, 11, 12; Deposition of Hilda Jenkins, sworn to Sept. 18, 1980, Exh. JJ, Committee Memorandum, at 7, 8; Deposition of Martin Melbourne, sworn to Sept. 18, 1980, Exh. KK, Committee Memorandum, at 5.

**16.** *See supra* note 14.

**17.** *See* Committee Memorandum at 2; *see also supra* text following note 8. There is undisputed testimony from a deponent who was a bail underwriter in 1976 for the Allied Fidelity Corporation—which was the managing general agent for Midland when the Friedgood bond was issued—that in 1975 it was the policy and practice of bondsmen working as agents for Midland to provide receipts reflecting each item of collateral received. *See* Bartley Dep. at 15–16; *see also id.* at 5.