UNITED STATES of America,
Plaintiff,

v.

Jing ZHANG, Defendant.

No. 98 CR. 1429(DAB).

United States District Court,
S.D. New York.

April 13, 2001.

Christopher Morvillo, Assistant U.S. Attorney, New York City, for U.S.

J. Jeffrey Weisenfeld, New York City, for Defendant.

## MEMORANDUM and ORDER

BATTS, District Judge.

On October 13, 2000 the Court issued a Memorandum and Order granting the Government's motion for an Order of Forfeiture on Defendant Jing Zhang's $350,000 personal recognizance bond but setting forfeiture aside as to sureties Mei Rong Zhang, Ren Xian Yang, Kin Wing Chiu, Ho Quan Cheung ("Surety Respondents") and securities Fa–Cheng Shao and Kin Shao ("Security Respondents"). Thereafter, the Government filed the instant Motion for Reconsideration. Further, an additional Respondent, Jing Biao Zhang, seeks to join *nunc pro tunc* in the Respondents' opposition to the Government's original motion for forfeiture. For the reasons set forth below, the Government's motion is denied. Respondent Zhang's motion for joinder is granted. Respondent Zhang's motion to set-aside forfeiture is denied.

The facts in this matter are fully set forth in the Court's October 13, 2000 Memorandum and Order. In brief, Defendant Jing Zhang is a fugitive whose presence was secured by a $350,000 personal recognizance bond ("PRB") signed by five original sureties and secured by a $76,000 confession of judgment and $20,000 in cash. A year after Zhang's release, he was rearrested and indicted on witness tampering charges and ultimately entered a guilty plea to a portion of the charges against

him. Thereafter, after two additional sureties signed the PRB, Zhang was released pending sentence. One and a half months later, Zhang absconded and has remained a fugitive.

Upon the Government's motion, this Court forfeited the PRB and entered judgment against Zhang's immediate family members Guo Ai Jin and Zhang Jing Hong, who signed the PRB in order to facilitate Zhang's re-release, and Neng Qiang Zhang, Zhang's father, who signed the original bond but lived with the Defendant and therefore had constructive notice of his re-arrest and later release. However, as to the remaining Signatory and Security Respondents, the Court set aside forfeiture on the grounds that the Government, by re-releasing Zhang after commission of a serious additional crime without notice to the Respondents, breached its duty by materially increasing the risk of flight. The Court, upon review of submitted affidavits, found that the six remaining Respondents had not received adequate notice of the increased risk.

The Government seeks reconsideration on the basis that 1) it owed no duty to the Security Respondents who were not signatories to the bond; 2) the Court abused its discretion in not holding a hearing on the issue of notice; and 3) release of the four co-signors creates a rule with onerous implications for the Government.

## I. DISCUSSION

### A. Joinder

■ Jing Biao Zhang is Defendant Zhang's brother. It has now come to light that Respondent Zhang was the party who posted the $20,000 cash security erroneously attributed to Fa–Cheng Shao and Kin Shao in the parties' earlier submissions. (Weisenfeld Aff. ¶ 5; Zhang Aff. ¶¶ 1–2.) According to an affidavit submitted by Respondent Zhang, Zhang posted the $20,000 in bank checks and money orders with the Court as security for the bail bond of Jing Zhang. (*Id.* ¶ 3.) Respondent Zhang now seeks to join *nunc pro tunc* in the Respondents' previously submitted motion.

The interests of justice are served by granting Respondent Jing Biao Zhang's motion for joinder. Further, the Government consents to the motion for *nunc pro tunc* joinder. Morvillo Ltr. dated Dec. 11, 2000 at 1. Accordingly, as there exists no prejudice to any party, Respondent's motion for joinder is GRANTED *nunc pro tunc* as if he had joined in the July 18, 2000 cross-motion for set aside submitted by six of the now ten Respondents.

### B. Rights of Respondent Jing Biao Zhang

The Court must first evaluate Respondent Jing Biao Zhang's motion to set aside the forfeiture. Respondent Zhang explains that when he posted the $20,000 with the Court, he received a court receipt stating simply that $20,000 was "RECEIVED FROM" "[hand-written] Zhang Jing Biao, USA v. Zhang Jing, 98 CR 1429, M19–1–10452 / BAIL". (Zhang Aff. Ex. A.) Zhang states in his affidavit, "[a]t the time I posted the $20,000.00, I was aware that if my brother failed to comply with the conditions of bail, I would lose the $20,000.00." (Zhang Aff. ¶ 3.)

Zhang lives in Albany but stays with his family when in Manhattan. (*Id.* ¶¶ 4–5.) Zhang states that while he was aware that his brother had been re-arrested, *id.* ¶ 7, because he was traveling in China from April 1, 2000 until September 19, 2000, *id.* at ¶ 8, Ex. B (passport records documenting same), he was unaware of Zhang's re-release until he returned to the United States. (*Id.* ¶¶ 9, 11.) Respondent Zhang states, "[i]f I had been contacted by the

government or anyone else before I left for China, I would have told them that [I] did not want the $20,000.00 to be posted on any bail for my brother's re-release." (*Id.* ¶ 10.) Notably, Defendant Zhang was re-arrested in early March 2000, before Respondent Zhang's departure, and was re-released on June 26, 2000, while his brother was in China.

The Government argues that Respondent Zhang lacks standing to assert his right to the funds as he was not a signatory to the bond. However, it is unnecessary to determine the standing of Respondent Jing Biao Zhang as he is not entitled to return of the funds in any case.

 Respondent Zhang states he had notice of his brother's re-arrest as of April 1, 2000 when he returned to Manhattan before leaving for China. (Zhang Aff. ¶¶ 7–8). Thus, Respondent was aware of his brother's incarceration on new and serious charges prior to Defendant Zhang's re-release on June 26, 2000. Respondent's consent to Zhang's re-release can be inferred from his knowledge and failure to come forward to seek release and return of the funds. *See United States v. Gambino,* 17 F.3d 572, 574 (2d Cir.1994) (citing *United States v. Egan,* 394 F.2d 262, 267 (2d Cir.1968)). *See also United States v. Jones,* 719 F.2d 110, 112 (5th Cir.1983) ("[Surety] could have, for instance, protected itself by moving for relief from its bond before [defendant] was released from custody on his re-arrest"). Finding no reason to set

aside or otherwise remit the forfeiture, Respondent Zhang's motion for relief from forfeiture is hereby DENIED.

## C. Rights of Respondents Fa–Cheng Shao and Kin Shao

Respondents Fa–Cheng Shao and Kin Shao are residents of Pennsylvania who posted a $76,000 confession of judgment against their home as security for Defendant's PRB.[1] The Court set aside forfeiture as to the Shaos finding that the Shaos had no notice of Zhang's re-arrest. Memorandum & Order dated Oct. 13, 2000, at 10–12.

### 1. Standing

On this motion for reconsideration, the Government takes the position that because Respondents Fa–Cheng Shao and Kin Shao posted assets to secure the bond but did not sign the bond, they lack standing to enforce the terms of the bond.[2] The Court previously found that the Government modified the terms of the bond by materially increasing the risk of flight when it failed to notify the sureties of Zhang's re-arrest prior to his re-release.[3] Memorandum and Order, dated Oct. 13, 2000, at 11. Thus, to extend the Government's argument to its logical endpoint, the Government seeks to be free to modify the bond and breach its obligations to the sureties and thereafter benefit from that breach by claiming the posted security—

---

**1.** The October 13, 2000 Order of this Court incorrectly attributed a $96,000 security posting to the Shaos consisting of the $76,000 confession of judgment and the $20,000 in cash. The cash deposit should have been credited to Respondent Zhang. *See infra.*

**2.** The Government also asserts that Respondent Zhang lacks standing, however, the Court does not reach this argument. *See infra.*

**3.** Memorandum and Order, dated Oct. 13, 2000, at 10 ("The Court accordingly accepts the proposition that Zhang's commission of a serious additional crime while released on bail created an increased risk of flight based upon his demonstrated disregard of the law and disrespect for the obligations assumed by the sureties on his behalf.") "The Government failed to protect the interests of the sureties, either by informing the sureties of Zhang's re-arrest prior to his re-release, or even by simply opposing the re-release." *Id.* at 11.

all with no possible remedy to the securities. The Government has cited no factual or case law support for its position.

### a. Title

■ The Government first argues that it is entitled to a presumption that the home posted by the Shaos is Defendant Zhang's property, and as such, may be forfeited due to Zhang's failure to appear. The Government is correct, to the extent that it may be entitled to such a presumption during the pendency of the bond. *See Midland Ins. Co. v. Friedgood,* 577 F.Supp. 1407, 1411 (S.D.N.Y.1984) (applying cash bail title rules to collateral posted as bond security), citing *People v. Castro,* 119 Misc.2d 787, 796, 464 N.Y.S.2d 650 (Sup.Ct.1983) (tracing historical distinctions in English common law between bail bondsmen and depositors of cash bail and finding that "until the criminal proceeding has been terminated the cash bail is deemed to be owned by defendant but thereafter, the actual depositor is deemed to be the owner.").

■ However, it has been the rule in this Circuit since 1937 that, once the bond is discharged, courts should not presume money posted as bail is the defendant's. *See Jacobson v. Hahn,* 88 F.2d 433 (2d Cir.1937). Once the conditions of the bond have been satisfied, a person posting security has a superior claim to the funds posted. *See id.* (requiring depositor to establish deposit, defendant's discharge from custody, and demand); *United States v. Markiewicz,* No. 96 Crim. 122(RSP), 1998 WL 37592 (N.D.N.Y.1998) (affirming standing of third party to seek return of bail deposited once defendant timely surrendered into custody). *See also United States v. Rubenstein,* 971 F.2d 288 (9th Cir.1992) (finding that absent proof that title transferred to the defendant, title to

the security should remain with the third-party).

Accordingly, treatment of the security here turns upon whether the bond has been discharged or is still pending. If the bond is still pending, the security deposit remains Defendant Zhang's property and may be rightfully forfeited as Zhang has clearly breached the terms of the bond. If, on the other hand, the bond is discharged, title returns to the Shaos. The typical cases, cited above, address only transfer of title once the defendant has surrendered or otherwise met the conditions of the bond. *But see United States v. Parr,* 594 F.2d 440, 444 (5th Cir.1979) (forfeiting $10,000 of $75,000 security posted by third party where defendant failed to appear due to suicide).

■ The unique facts of this case, whereby the bond was breached, in part, due to the failure of the Government, raises a question of first impression. However, equitable and legal considerations favor the Respondents. The law is clear that sureties must be released from the bond where the Government materially increases the risk to the sureties without their notice and consent. *See United States v. Martinez,* 151 F.3d 68, 72 (2d Cir.1998). Further, six of the Respondents state they would have withdrawn from the bond if they had been notified of the increased risk of flight. Thus, had the Government met its notice obligation, Zhang was unlikely to have met bail and would have been detained. Stated simply, absent the Government's breach, the Respondents would not now face forfeiture proceedings. Accordingly, principals of law and equity dictate that the Government's failure to notify the sureties of the increased risk of flight must act to release the non-consenting Respondents and discharge the bond as to them.

With the bond discharged, title in the confession of judgment must vest in the non-consenting Respondents Fa–Cheng and Kin Shao.[4] As the Shaos enjoy title to property held by the Court, they clearly have standing to seek return of their property. *See Markiewicz,* 1998 WL 37592, at *1.

### 2. Subsuretyship

Having found that title in the confession of judgment now vests with the Shaos, the Court must next consider whether Respondents are entitled to return of their property.

The Government makes much of the Shaos' failure to sign the bond. Because the Shaos posted security for the bond without signing it, the Government argues that Respondents were not sureties under the bond and thus have no standing to argue for set-aside of the forfeiture due to the Government's act of materially increasing the risk of flight. A similar argument was addressed and rejected by the Fourth Circuit in *Allstate Ins. Co. v. American Bankers Ins. Co.,* 882 F.2d 856, 860–62 (4th Cir.1989).

In *Allstate* a friend of a criminal defendant attempted to assign a security to a third party, who, in turn, executed and signed a bail bond. As in the instant case, the Government returned a superceding indictment containing new and more serious criminal charges. 882 F.2d at 860. While the surety who had executed the bond was aware of the new charges and did not object to the defendant's re-release on the original bond, the party posting security was not so informed. *Id.* at 859. Thereafter, the security sought release from the security assignment on the grounds, *inter alia,* that the Government's

act of materially increasing the risk of flight, without notice to the security, released the security from any obligation. *Id.* at 860–61. The Court agreed.

Finding that " 'the legal principles applicable to the construction and consequences of security agreements are equally applicable to bail bonds,' " the Fourth Circuit reached its conclusion based on a thorough analysis of security law. *Allstate,* 882 F.2d at 862 (quoting *State v. Weissenburger,* 189 N.J.Super. 172, 459 A.2d 693, 696 (1983)). As in *Allstate,* the Government here was functionally a creditor while Defendant Zhang was the principal under the bail bond. Those persons who signed the bond became Zhang's sureties, while those who posted security for the bond became subsureties. *See Id.* at 861 (citing *Restatement of the Law of Security* § 145 (1941)). Functionally, those executing the bond enjoyed a dual role: as sureties to the principal Zhang and as principals to their sureties, the Security Respondents. *Id.* This is so, notwithstanding the Security Respondents' failure to themselves execute the bond. *Id.*

 Under clearly established New York law, where, without the surety's consent, a creditor and principal modify their contract, the surety is discharged unless the modification benefits the surety. *Becker v. Faber,* 280 N.Y. 146, 19 N.E.2d 997 (1939). *See also Allstate,* 882 F.2d at 862 (citing *Restatement of the Law of Security* § 128(a)). Here, the Government, as creditor, modified the contract by increasing the risk of flight thus enlarging the risk to the sureties and subsureties. Consequently, absent consent, either express or implied, *see Gambino,* 17 F.3d at 574, the sureties, including the non-signatory sub-

4. Notably, as the Shaos entered a contractual confession of judgment with full identifying information, the Government wisely does not

suggest that it was incapable of notifying the Shaos prior to Zhang's re-release as it argued for Respondent Zhang.

sureties who posted the security are released from their obligations as a matter of law.[5]

Although, the Court previously found that Surety Respondents Neng Qiang Zhang, Guo Ai Jin, Zhang Jing Hong,[6] and now Security Respondent Jing Biao Zhang consented to the modification, this consent cannot be assigned to Fa–Cheng Shao and Kin Shao. This is so because the consenting Sureties were principals vis-a-vis their relationship with the Shaos. Thus, the modification agreed upon between the Government and the three consenting Sureties, which increased the risk to the subsureties, will discharge the Shaos' obligation in the absence of their consent. Accordingly, as the Court previously found that the Shaos lacked knowledge of Zhang's re-arrest, the Shaos duty to the Government under the confession of judgment is set-aside and the Government's Motion for Reconsideration as to the Shaos is denied.

### 3. Breach of Bail Conditions

█ In an effort to save its otherwise flawed claim to the confession of judgment, the Government argues on this Motion for Reconsideration, that the Shaos' security should also be forfeited on the grounds that Zhang breached a condition of his bail when he tampered with a witness in violation of federal law and his bail conditions. Morvillo Ltr., dated Dec. 5, 2000 (citing 18 U.S.C. § 3142(c)(1)(A)). However, the Government did not seek forfeiture at the time of this earlier breach, and will not be heard to raise this argument here for the first time. The Government, having failed to move in a timely manner, and having prejudiced the Shaos through its act of materially increasing the risk of flight, has persuaded the Court that justice does not require forfeiture on these grounds. *See* Fed.R.Crim.P. 46(e)(2).

### D. Hearing

The Court previously found, without a hearing, that six of the Respondents lacked knowledge of Zhang's re-arrest.[7] *See* Memorandum & Order, dated Oct. 13, 2000, at 11 (citing affidavits stating that the Respondents had no knowledge of Zhang's re-arrest and had they known each would have sought release from his or her obligations). The Government argues the Court's refusal to hold an evidentiary hearing on the issue of notice and consent was an abuse of discretion. The Government seeks an evidentiary hearing as to all six of the Respondents who were exonerated pursuant to the Court's previous Order. *See* Memorandum & Order, at 15.

█ A district court's decision to hold a hearing on remission is discretionary. *United States v. Diaz*, 811 F.2d 1412, 1414 (11th Cir.1987). Applying this rule, the Seventh Circuit held, "[w]here, as here, the affidavits of the parties adequately set forth the relevant facts, a full-scale evidentiary hearing is not required." *United States v. Gutierrez*, 771 F.2d 1001, 1004 (7th Cir.1985). *See also Diaz*, 811 F.2d at 1414 ("as long as the district court judge has all the necessary facts to make a just

---

**5.** The Government argues that it has no duty to notify a nonsignatory security of modifications to the bond as this would impose an undue burden on the Government. While the Court makes no ruling on the question of duty to inform subsureties, it does note that the Government, as creditor, may wish to ensure the consent of the subsureties if it hopes to later enjoy the benefit of a posted security.

**6.** Incorrectly named as Jing Hong Zhang in the Court's earlier Memorandum.

**7.** The six exonerated Respondents are: Mei Rong Zhang, Ren Xian Yang, Kin Wing Chiu, Ho Quan Cheung, Fa–Cheng Shao, and Kin Shao.

and equitable determination of the case, there is no point in further belaboring the court system with an evidentiary hearing.").

 Here, the only issue relevant to exoneration for each of the above six Respondents is whether each had knowledge of Zhang's re-arrest prior to his re-release on June 26, 2000. Each Respondent has submitted an affidavit stating he or she was unaware of Zhang's re-arrest. The additional facts, which the Government wishes to unearth, such as the parties' relationship with Zhang or their knowledge of his guilty plea, do not impact their stated lack of knowledge and therefore, lack of consent. The Court finds each Respondent credible under the circumstances and declines to subject the parties to further examination by the Government. *See* Memorandum & Order, at 11 (noting same). Accordingly, the Government's motion for an evidentiary hearing is DENIED.

The Court has reviewed the remainder of the Government's motion and finds the arguments therein unpersuasive. The Government's obligation to notify and obtain the consent of all co-signors to a bond when a defendant is arrested on serious new charges, which materially increase the risk of flight, prior to release on the original bond is not, as the Government asserts, a new and "sweeping affirmative obligation." Govt. Mem. Law at 16. Rather, it is a statement of existing law. *See* Memorandum & Order, at 7–10 (collecting cases).[8] Accordingly, the remainder of the Government's motion is DENIED.

## II. CONCLUSION

For the reasons stated, it is hereby ORDERED that

(1) the Personal Recognizance Bond for the appearance of Defendant Jing Zhang (98 Cr. 1429) is hereby Forfeited;

(2) the Bond is set aside in the interest of justice as against the Sureties Mei Rong Zhang, Ren Xian Yang, Kin Wing Chiu, Ho Quan Cheung, Fa–Cheng Shao, and Kin Shao and said Respondents are hereby Exonerated of their obligations under the Bond pursuant to Fed.R.Crim.P. 46(f);

(3) with respect to Defendant Jing Zhang and Respondents Neng Qiang Zhang, Guo Ai Jin, Zhang Jing Hong, and Jing Biao Zhang, the Court hereby directs the Clerk of Court to enter a Judgment of Default pursuant to Fed. R.Crim. P 46(e)(3); and

(4) the Clerk of the Court is directed to release the bail security, in the form of a confession of judgment executed by Fa–Cheng Shao and Kin Shao, upon application by Respondents Fa–Cheng Shao and Kin Shao pursuant to Fed.R.Crim.P. 46(f).

SO ORDERED.

8. To the extent the Government raises the example of co-defendant Zhang Wu as evidence of the unmanageable burden of requiring notice prior to bail modification, the Court notes that it delayed issuing Defendant Wu's bail modification Order and understood the sureties to have consented to Wu's modification at the time entry. To the extent they had not yet consented, the onus was upon the Government to inform the Court, who would have promptly rescinded the modification Order.